Johnifer Ray MUMPHREY, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–04–00026–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 6, 2004.

Decided Jan. 19, 2005.

Tim Cone, Gilmer, for Appellant.

Ray Bowman, Asst. Dist. Atty., Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Johnifer Ray Mumphrey was convicted by a jury for an assault causing bodily injury on Theresa Reedy, a member of his family or household. *See* TEX. PEN.CODE ANN. § 22.01 (Vernon Supp.2004–2005), § 12.21 (Vernon 2003). The trial court assessed punishment at 270 days' confinement in jail and sentenced him accordingly. On appeal, Mumphrey contends the trial court erred with respect to several of its evidentiary rulings and in overruling his objection to the State's jury argument. He also contends defense counsel rendered ineffective assistance. We overrule these contentions and affirm the judgment.

## I. EVIDENTIARY RULINGS

The State presented two witnesses: Sheriff's Deputy Craig Strickhausen, the responding officer, and Reedy. Mumphrey presented his sole witness, Cheryl Morgan, with whom Mumphrey and Reedy lived at the time of the offense. Morgan's testimony focused on the fact she rarely saw Reedy take her medication for her mental disorders.

### A. Expert Testimony by Deputy

■ In his first point of error, Mumphrey contends the trial court erred in overruling his objection to Strickhausen's opinion testimony that Reedy had been assaulted. The trial court's ruling, he argues, ran afoul of TEX.R. EVID. 702 by improperly allowing the deputy to give expert opinion testimony.

### 1. Standard of Review

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex.Crim.App.2002); *Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996).

### 2. Testimony at Issue

Mumphrey's contention centers on the following exchange between the State's attorney and Strickhausen:

> [STATE]. After talking to Ms. Reedy and Ms. Jackson, did it further your professional opinion as a deputy that an assault had taken place?
>
> [DEFENSE]. I object, Your Honor. Bolstering.
>
> THE COURT. Overruled.
>
> [WITNESS]. Yes, ma'am. I believed that she had been assaulted.

### 3. Error Was Not Preserved by Bolstering Objection

 Mumphrey's objection to this testimony raised only the issue of bolstering. Bolstering occurs when one party introduces evidence for the purpose of adding credence or weight to earlier unimpeached evidence offered by that same party. *Rousseau v. State*, 855 S.W.2d 666, 681 (Tex.Crim.App.1993); *Woods v. State*, 13 S.W.3d 100, 102 (Tex.App.-Texarkana 2000, pet. ref'd). More precisely, "bolstering" is any evidence the sole purpose of which is to convince the fact-finder that a particular witness or source of evidence is worthy of credit, without substantively contributing "to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex.Crim.App.1993); *Woods*, 13 S.W.3d at 102. Accordingly, evidence that corroborates another witness' story or enhances inferences to be drawn from another source of evidence, in the sense that it has an incrementally further tendency to establish a fact of consequence, should not be considered "bolstering." *Cohn*, 849 S.W.2d at 820.

In order to preserve error for our review, the record must show compliance with Rule 33.1 of the Rules of Appellate Procedure:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and

(2) the trial court:

(A) ruled on the request, objection, or motion, either expressly or implicitly; or

(B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

TEX.R.APP. P. 33.1.

Mumphrey complains the trial court improperly admitted Strickhausen's expert testimony in violation of Texas Rule of Evidence 702. The issue raised on appeal does not concern the issue of bolstering raised at trial. Because Mumphrey's trial objection does not comport with the issue raised on appeal, he has preserved nothing for review. *See Ibarra v. State*, 11 S.W.3d 189, 197 (Tex.Crim.App.1999).

### B. Admission of Hearsay

In his second point of error, Mumphrey complains about the admission into evi-

dence of: a) Strickhausen's testimony regarding statements Reedy made to him at the scene; and b) videotaped statements by Reedy recorded within an hour of the assault.

### 1. Standard of Review

 The admissibility of an out-of-court statement under a hearsay exception is within the trial court's discretion, subject to review only for abuse of discretion. *King v. State,* 953 S.W.2d 266, 269 n. 4 (Tex.Crim.App.1997); *Lawton v. State,* 913 S.W.2d 542, 553 (Tex.Crim.App.1995).

### 2. Evidence at Issue

The trial court admitted, over defense counsel's objection, Strickhausen's testimony regarding statements by Reedy made at the scene of the alleged assault. Specifically, Mumphrey complains of the following exchanges:

[STATE]. And what did Ms. Reedy tell you about what happened that night?

[DEFENSE]. Objection. Hearsay, Your Honor.

THE COURT. Under the excited utterance rule as an exception, I'll allow the testimony.

. . . .

[WITNESS]. I asked Ms. Reedy what happened, and she stated that she had been assaulted. I asked who assaulted her, and she said Johnifer Ray Mumphrey.

[STATE]. Did she tell you in what manner she had been assaulted?

. . . .

[DEFENSE]. Same objection, Your Honor.

THE COURT. I'll give you a running objection on the statements that

I've ruled are excited utterances and are thereby an exception to the hearsay rule.

Proceed.

[WITNESS]. I asked her how he assaulted her. She stated that he came over to the residence asking for some money. She would not give him any money, and he approached her. She went down the hallway and shut a bedroom door—went into a bedroom and shut the door and leaned against it. He forced himself into the bedroom and began assaulting her.

[STATE]. . . . Did she tell you what he did to assault her specifically?

[WITNESS]. Yes, ma'am. She said that he hit her in the face, struck her in the face and in the back and neck area.

Strickhausen recorded a videotape that morning in which Reedy answered similar questions. Over defense counsel's hearsay objection, the trial court admitted the videotape.

### 3. Excited Utterance Exception to Rule Against Hearsay

 Because Reedy's statements are out-of-court statements made to prove the truth of the matter asserted, testimony regarding these statements is hearsay. *See* TEX.R. EVID. 801(d). We must look to the Rules of Evidence to see if there is an applicable exception to the rule excluding hearsay.[1] TEX.R. EVID. 802.

The trial court ruled that Reedy's statements to police qualified as excited utterances, an exception to the rule excluding hearsay. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by

---

1. Reedy testified at trial. Therefore, the concerns raised by the recent decision by the United States Supreme Court in *Crawford v.* *Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), are not relevant in this case.

the event or condition." Tex.R. Evid. 803(2); *Glover v. State,* 102 S.W.3d 754, 763 (Tex.App.-Texarkana 2002, pet. ref'd).

For the excited utterance exception to apply, three conditions must be met: (1) the statement must be a product of a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous and unreflecting, (2) the state of excitement must still so dominate the declarant's mind that there is no time or opportunity to contrive or misrepresent, and (3) the statement must relate to the circumstances of the occurrence preceding it. *Sellers v. State,* 588 S.W.2d 915, 918 (Tex. Crim.App. [Panel Op.] 1979); *Glover,* 102 S.W.3d at 763. Each element need not be neatly drawn out and satisfied. However, the cumulative effect of the three elements must indicate that the statement is sufficiently reliable as to warrant exception to the hearsay rule. *See Sellers,* 588 S.W.2d at 918; *Glover,* 102 S.W.3d at 763.

Mumphrey does not challenge the first or third considerations. Rather, his point of error involves only the second consideration of the excited utterance exception, that the declarant still be dominated by the emotion or stress of the event.

The excited utterance exception is based on the theory that a spontaneous statement made in response to a startling event is more reliable and, therefore, falls outside the purpose of the hearsay exclusion. *See Couchman v. State,* 3 S.W.3d 155, 159 (Tex.App.-Fort Worth 1999, pet. ref'd). An excited utterance is made without adequate time to fabricate or reflect on the event. *See id.* The record must show the declarant was excited or emotionally stimulated or in the grip of a shocking event so as to render the statement a spontaneous utterance. *Salazar v. State,* 38 S.W.3d 141, 154 (Tex.Crim.App.2001).

Spontaneity is the primary factor which makes an excited utterance reliable. *Glover,* 102 S.W.3d at 763. When a court determines whether the statement meets the requisite spontaneity element, no single, rigid principle governs. *Snellen v. State,* 923 S.W.2d 238, 243 (Tex.App.-Texarkana 1996, pet. ref'd). The court will consider each case on its own particular facts. *Fisk v. State,* 432 S.W.2d 912, 914 (Tex.Crim.App.1968).

A court will consider the amount of time that has elapsed since the event. *Salazar,* 38 S.W.3d at 154. It will also consider whether the statement at issue was made in response to questioning by another. *Id.* Neither factor, however, is dispositive of the issue. *Id.* The pivotal consideration becomes whether the declarant was still dominated by emotions, excitement, fear, or pain of the event. *Zuliani v. State,* 97 S.W.3d 589, 596 (Tex. Crim.App.2003). If the record supports such a conclusion, the spontaneous statement may be admissible even after an appreciable amount of time has elapsed since the startling event. *See id.* (statements admissible when victim of assault made statement twenty hours later but had not been separated from her aggressor since assault); *Snellen,* 923 S.W.2d at 243 (statements admissible when victim of sexual abuse made statement thirteen or fourteen hours after event had occurred).

## 4. Statements at Scene Qualified as Excited Utterances and, Thus, Were Admissible

The assault occurred in the early morning hours of May 29, 2003, while Reedy and Mumphrey were at the home of his sister, Linda Jackson. Reedy testified Mumphrey struck her several times and chased her through the house because she had refused to give him money. She ran from him and called 9–1–1 from a locked

bathroom as Mumphrey pounded on the door. Mumphrey left before police arrived.

Although Reedy could not specify the length of time that passed between her call to 9–1–1 and the arrival of the police, she did say that "[i]t didn't take long" for the officer to arrive. Strickhausen testified that he received a call from dispatch at 5:09 a.m. and that it took him fifteen to twenty minutes to arrive at the scene. On his arrival at the scene, Strickhausen spoke with a "very emotional" Reedy, who appeared "very shaken up, very scared, crying."

Strickhausen began recording the videotape at 5:40 a.m., only thirty-one minutes after dispatch and before he left the scene of the assault on the morning of May 29. He testified the videotape was taken within one hour of the assault. On the videotape, Reedy is visibly distraught. She rocked back and forth, and spoke in a very shaken voice. She cried throughout the videotape, and hiccoughs accompanied her crying. Blood from her lip injury was visible on her shirt.

 Even though many of the statements were made in response to Strickhausen's questions, Reedy appears to still be acting under the stress of the assault, as evidenced by her mannerisms, voice, demeanor, and appearance, to which Strickhausen testified and which are apparent on the videotape. The trial court acted well within its discretion when it determined that the statements, both those made to Strickhausen and those recorded on the videotape, made by a distressed Reedy within one hour of the assault, were sufficiently reliable and, thus, admissible as excited utterances.[2]

## C. Refusal to Replay Videotape

In his third point of error, Mumphrey complains of the trial court's refusal to allow defense counsel to replay the videotape for the purposes of impeachment or clarification. The record does not conclusively show that Mumphrey made a formal request to the trial court to replay the videotape. The issue arose during cross-examination of Strickhausen:

[DEFENSE]. Okay. And I believe on the videotape she said—when you asked

---

**2.** Even if the videotape had been inadmissible hearsay, its introduction would be harmless since the same statements were admitted into evidence through Reedy's own testimony that Mumphrey assaulted her. *See* Tex.R. Evid. 103(a); Tex.R.App. P. 44.2(b). The trial court's overruling of an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State,* 983 S.W.2d 713, 718 (Tex.Crim.App. 1998).

Mumphrey's next point of error also invokes consideration of the doctrine of curative admissibility and the possibility that, by requesting to replay the videotape, he waived any error in admitting the videotape. Essentially, the doctrine stands for the proposition that error regarding improperly admitted evidence is waived if that same evidence is introduced later by the defendant. *See Rogers v.*

*State,* 853 S.W.2d 29, 35 (Tex.Crim.App. 1993); *Maynard v. State,* 685 S.W.2d 60, 65 (Tex.Crim.App.1985). A defendant may not complain of the admission of testimony elicited by that defendant. *Dyche v. State,* 490 S.W.2d 568, 569 (Tex.Crim.App.1973). When a defendant elicits the same testimony to which he or she has earlier objected, such defendant is not in a position to complain on appeal. *Maynard,* 685 S.W.2d at 65.

There are exceptions to the application of this doctrine, however. "[E]rror is not waived when the evidence is brought in later in an effort to meet, rebut, destroy, deny or explain the improperly admitted evidence." *Rogers,* 853 S.W.2d at 35. We will treat Mumphrey's stated purpose in requesting to replay the videotape as such an effort since he was arguably attempting to clarify what Reedy had said on the videotape.

her if anybody witnessed it, she said, "The kids did"; is that right?

[WITNESS]. No. The kids were in another room. They were not present during the assault.

[DEFENSE]. Okay. But do you recall just a second ago watching the video, and you asked her, "Did anybody see this happen"?

[WITNESS]. Uh-huh.

[DEFENSE]. And she said, "The kids did"; is that right?

[WITNESS]. I asked her—yeah, if the kids—

[DEFENSE]. No. You asked her, "Did anybody see it?"; is that right?

[WITNESS]. Yes, I did.

[DEFENSE]. On the tape?

[WITNESS]. Yes, I did.

[DEFENSE]. And on the tape she said, "The kids did," didn't she?

[WITNESS]. No, sir, she didn't.

[DEFENSE]. Do you want to play it again?

THE COURT. Let's not argue with the witness. The jury has the evidence. They've got the tape. They can make these decisions.

It is unclear whether the question, "Do you want to play it again?" was directed at Strickhausen in response to the disagreement over what Reedy said on the videotape or whether it was directed to the trial court. It is clear, however, that, regardless of the person to whom the question was directed, the trial court determined that replaying the videotape was unnecessary since the jury had seen the videotape. On appeal, Mumphrey complains of the

trial court's refusal to play the videotape again.

### 1. Standards of Review

■■■■ We will read this point of error as raising Mumphrey's complaint about exclusion of evidence and the trial court's conduct of the trial. The trial court's evidentiary rulings are subject to review for an abuse of discretion. *Green*, 934 S.W.2d at 101–02. Likewise, the trial court enjoys broad discretion in the conduct of the trial and the questioning of witnesses; its rulings on these matters will also remain undisturbed absent an abuse of discretion. *Suiter v. State*, 165 Tex.Crim. 578, 310 S.W.2d 81, 82 (1958); *Richardson v. State*, 753 S.W.2d 759, 770 (Tex.App.-Dallas 1988, no pet.).

### 2. Refusal to Replay Videotape Was Not an Abuse of Discretion

■■■■ First, the statement at issue was not a prior inconsistent statement by Strickhausen and therefore could not serve to impeach him on that basis. Rule 613 governs the admissibility of prior inconsistent statements for purposes of impeachment. Tex.R. Evid. 613. The purpose of impeachment evidence is to discredit the veracity of the witness.

Rule 613's requirements were not met. There is no inconsistent statement by Strickhausen.[3] He may have been mistaken about who said what on the videotape, but he never made an inconsistent statement as to this particular matter. The prior inconsistent statement is not his; Reedy made the statement at issue regarding whether the children in the house witnessed the assault. This is not proper impeachment of Strickhausen based on a

---

**3.** Mumphrey cites Tex.R. Evid 801(e)(1)(A) in support of his contention. However, this rule pertains to prior statements by a witness which are not hearsay and is inapplicable because the witness, Strickhausen, did not

make the prior statement and because the statement in dispute was not made under oath at a trial, hearing, or other proceeding. *See* Tex.R. Evid. 801(e)(1)(A).

prior inconsistent statement by him. The videotaped statement may have been proper impeachment evidence with respect to Reedy, but not Strickhausen. The trial court did not abuse its discretion on this basis in overruling Mumphrey's request to replay the videotape.

Second, the jury received this evidence by having seen the videotape one time.[4] Mumphrey asserts he should have been allowed to show it again. The trial court was well within its discretion to limit the number of times the videotape was shown to the jury. We overrule Mumphrey's third point of error.

## D. Exclusion of Evidence

Mumphrey complains, in his fourth point of error, of the exclusion of three items of evidence: 1) information regarding Reedy's tendency to imagine things that are not true or real, 2) Reedy's testimony regarding whether she and Mumphrey had lived or been together since the alleged assault, and 3) evidence that Reedy had assaulted Mumphrey.

### 1. Standard of Review

An appellate court reviews a trial court's decision to exclude evidence under an abuse of discretion standard. *Burden v. State,* 55 S.W.3d 608, 615 (Tex.Crim.App. 2001).

### 2. Preservation of Error: Offer of Proof

■■■ The State argues Mumphrey failed to preserve error with respect to these contentions because he failed to make a formal offer of proof. However, we must examine the nature of the excluded evidence in order to determine what steps must be taken to preserve for our review a complaint regarding exclusion of evidence. *See Virts v. State,* 739 S.W.2d

25, 29 (Tex.Crim.App.1987); *Koehler v. State,* 679 S.W.2d 6, 9 (Tex.Crim.App. 1984). The Texas Court of Criminal Appeals has recognized a distinction between a situation where the defendant desires to elicit certain, specific responses from a state's witness but is precluded by the trial court from doing so, and a situation where the defendant is not permitted to question a state's witness about a certain general subject that might affect the witness' credibility. *Virts,* 739 S.W.2d at 29; *Koehler,* 679 S.W.2d at 9.

#### a. When a Formal Offer of Proof Is Necessary to Preserve Error

■■■ In the former situation, dealing with exclusion of cross-examination intended to elicit specific evidence, to preserve error for appellate review the defendant has two options: 1) have the witness testify and answer the specific questions the defendant desires to ask, but has been precluded from asking, in the presence of the jury; or 2) make an offer of proof of the questions the defendant would have asked and the answers expected had such questioning in the presence of the jury been permitted. *Virts,* 739 S.W.2d at 29; *see* TEX.R. EVID. 103(b).

In such a situation, absent one of the aforementioned methods, any claim of error is not preserved for appellate review. *Warner v. State,* 969 S.W.2d 1, 2 (Tex. Crim.App.1998); *Hambrick v. State,* 11 S.W.3d 241, 243 (Tex.App.-Texarkana 1999, no pet.). This situation calls for strict application of the Rules of Evidence regarding offers of proof:

> (a) **Effect of Erroneous Ruling.** Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and
>
> ....

4. The jury requested to see the videotape again. It appears this request was granted.

(2) *Offer of proof.* ... the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked.

Tex.R. Evid. 103(a)(2); *see Hambrick,* 11 S.W.3d at 243.

### b. When Less Than a Formal Offer of Proof Will Preserve Error

When a trial court excludes evidence designed to call into question the witness' "bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility," the defendant has less rigid requirements to preserve error for appeal. *Virts,* 739 S.W.2d at 29; *Koehler,* 679 S.W.2d at 9. To have preserved error when the issue before the appellate court is whether appellant's counsel was denied the opportunity to question the testifying State's witness in the presence of the jury generally about what might have affected his or her credibility, the defendant need not have shown what his or her cross-examination would have affirmatively established; such defendant must merely have established what general subject matter about which he or she desired to examine the witness during the cross-examination and, if challenged, show on the record why such testimony should be admitted into evidence. *Virts,* 739 S.W.2d at 29; *Harris v. State,* 642 S.W.2d 471, 479–80 (Tex.Crim.App.1982).

### 3. Evidence of Reedy's Tendency to Imagine Things

Before his cross-examination of Reedy, defense counsel brought before the trial court his design to question Reedy on the following incident:

[DEFENSE]. ... I was going to ask her about an incident where she called the number on Mr. Mumphrey's cell phone thinking that it was some girl he was dating.

THE COURT. And your point would be?

[DEFENSE]. Just towards credibility, towards [Reedy's] tendency to kind of imagine things.

THE COURT. How do you know he wasn't dating her?

[DEFENSE]. Don't know—well, that's what that witness would prove up.

THE COURT. I don't think for a girlfriend to think her boyfriend was stepping out on her is something that is impeachable.

. . . .

[DEFENSE]. ... [I]t would go to bias or prejudice.

THE COURT. I see your point. I will not allow it.

. . . .

THE COURT. Do you want to make a further record on it?

[DEFENSE]. Well, no. You're telling me that I can't go into that?

THE COURT. I'm telling you it's not relevant.

### a. Complaint Preserved for Review

From this exchange, we see that Mumphrey offered the excluded evidence to undermine Reedy's credibility and/or to reveal Reedy's bias or prejudice. Such a purpose renders this excluded evidence safely in the second scenario for which Mumphrey need only have established the general subject matter which he desired to pursue during his cross-examination. He indicates that the excluded evidence dealt with the theory Reedy had only imagined Mumphrey's involvement with this unnamed female. The above exchange clearly established the general subject matter Mumphrey intended to pursue on cross-examination and, therefore, we conclude

that Mumphrey's complaint of the trial court's exclusion of this evidence is properly before us.

### b. No Error In Exclusion of Evidence

 Generally, and within reason, the trial court should always allow the accused great latitude to show any relevant fact that might tend to affect the witness' credibility. *See Virts,* 739 S.W.2d at 29; *Koehler,* 679 S.W.2d at 9. Specifically, cross-examination of a testifying state's witness to show that the witness has suffered a recent mental illness or disturbance is proper, provided such mental illness or disturbance is such that it might tend to reflect on the witness' credibility. *Virts,* 739 S.W.2d at 30. However, the trial court retains wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of issues, and the witness' safety. *Id.* at 28. Additionally, even when the trial court gives the wrong reason for its decision, we are bound to sustain the trial court's decision if it is correct on any theory of law applicable to the case. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

Although *Virts* holds that evidence of a mental illness is proper evidence to reflect on a witness' credibility, Mumphrey's specific proffer here was not evidence of a mental illness. We therefore agree with the trial court that such evidence was not relevant. If Mumphrey's purpose was to show Reedy's mental condition, that condition was shown by other evidence. Reedy testified on direct examination she is a paranoid schizophrenic. She also testified that her illness resulted in "major depression" and caused her to "hear voices." The evidence proffered by Mumphrey did not show Reedy's mental condition, but even if it did, it would have been cumulative. *See* Tex.R. Evid. 403.

Further, the trial court was within its discretion in excluding this proffered evidence on the basis that such testimony would be prejudicial or run the risk of confusion of the issues. Tex.R. Evid. 403. The trial court kept the focus on the most relevant issues and did not allow Mumphrey to bring in collateral matters concerning the couple's relationship. We do not find an abuse of discretion in excluding the cumulative, potentially prejudicial or confusing evidence of Reedy's suspicion that Mumphrey had another girlfriend. We overrule Mumphrey's contention.

### 4. Evidence of Reedy and Mumphrey's Reconciliation

 Before his cross-examination of Reedy, Mumphrey also alerted the trial court of his intent to question Reedy on the issue of her reconciliation and continued relationship with him after this assault:

[DEFENSE]. Okay. I think it's already been covered. And it was brought up about her, you know, not being together with him, and we're certainly going to bring in that they got back together. I don't know if that's extraneous but—

THE COURT. Since this offense occurred?

[DEFENSE]. Yes.

THE COURT. Not relevant.

Mumphrey argued that, because the State had questioned Reedy on the length and nature of the couple's relationship before the incident, the State had opened the door to such testimony. The trial court repeated its conclusion that an alleged reconciliation was "not relevant to whether or not this event happened" and went on to explain that any testimony from direct examination regarding the nature of the couple's relationship related only to the time

before the assault and that such testimony did not open the door to allow evidence of reconciliation after the assault.

The excluded evidence in this case is that type for which the proponent must make an offer of proof to preserve error. This evidence was designed to elicit certain specific responses, responses which would not have any bearing on Reedy's bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting credibility.

The record does not contain an offer of proof of the evidence about which Mumphrey complains.[5] Without such an offer, we cannot determine whether there was error in its exclusion. *See Hambrick,* 11 S.W.3d at 243. We overrule Mumphrey's contention.

### 5. Evidence of Reedy's Prior Assaults on Mumphrey

Mumphrey urged the trial court to allow testimony of prior assaults by Reedy against him to show her "bias or prejudice" or to reveal her "motive to fabricate" this incident. The trial court concluded that, based on the evidence before the court at the time, such alleged incidents were not relevant.

### a. Complaint Preserved for Review

■ Viewing the record and applying the law on preservation of error in a manner consistent with the approach enunciated in *Virts,* we conclude Mumphrey did preserve this complaint for appeal. *See*

*Virts,* 739 S.W.2d at 28–29. The testimony at issue was aimed at revealing Reedy's bias or motive to fabricate and, therefore, trial counsel preserved error when he demonstrated the general subject matter about which he wanted to cross-examine Reedy. *Id.*

### b. No Error in Exclusion of Evidence

■ The Rules of Evidence provide:
Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

Tex.R. Evid. 608(b).

Under Rule 609, a prior criminal conviction can be used to attack the credibility of a witness only if the crime was a felony or involved moral turpitude. Tex.R. Evid. 609(a). There was no showing that any of Reedy's alleged assaults on Mumphrey resulted in a felony conviction or was a crime involving moral turpitude. Such alleged assaults were therefore not admissible under this rule.

Mumphrey contends, however, that such alleged assaults were admissible to show Reedy's "bias or prejudice" or to reveal her "motive to fabricate" this incident. We recognize the trial court's wide latitude to limit cross-examination out of concern for harassment, prejudice, or confusion of issues. Although evidence of alleged prior assaults, for which there were no charges,

---

5. We recognize that an argument, albeit a tenuous one, can be made that evidence of reconciliation may undermine Reedy's credibility regarding the May 29 assault. Even if we analyzed the evidence as within the category of excluded evidence for which no offer of proof is required to preserve error, we would overrule Mumphrey's contention. From the description of the nature of the excluded evidence, we would conclude the

trial court's ruling that the evidence was not relevant did not fall outside the zone of reasonable disagreement. *See Salazar,* 38 S.W.3d at 151. Any evidence regarding whether Reedy and Mumphrey continued their relationship would not be relevant to whether the assault of May 29, 2003, occurred. The trial court did not abuse its discretion by excluding evidence of Reedy and Mumphrey's alleged reconciliation.

arguably might have some bearing on Reedy's motive to fabricate, the danger is much higher that such evidence would serve to confuse the matters before the jury. *See* Tex.R. Evid. 403. Evidence regarding Reedy's alleged, unreported assaults against Mumphrey necessarily brings with it collateral matters beyond the purpose stated by trial counsel. The trial court's ruling regarding this evidence centered on relevance and did not fall outside the zone of reasonable disagreement. *Salazar*, 38 S.W.3d at 151. The trial court did not abuse its discretion by excluding this evidence. We overrule Mumphrey's point of error to the contrary.

## II. JURY ARGUMENT

### A. Improper Jury Argument

Mumphrey complains of the following argument the State made to the jury:

> Ms. Reedy's emotional condition on the tape, you guys saw that. You saw how scared she was, how she was crying. She was very scared of the defendant at this time.

Mumphrey seizes on the language "at this time" to contend the State indicated that Reedy was scared of Mumphrey at the time of trial. Mumphrey objected to the argument after the jury retired to deliberate.

The trial court understood the State's argument to refer to *that* time, a reference to the time immediately following the assault and during the videotaped interview. Mumphrey requested an opportunity to reopen in order to address the argument and to offer the previously excluded evidence of reconciliation. The trial court refused his request.

### B. Mumphrey Did Not Preserve Error

■■■ Generally, an objection must be made as soon as the ground for objection becomes apparent. *Ford v. State*, 500 S.W.2d 827, 829 (Tex.Crim.App.1973). More specifically, in order to preserve jury argument error, an objection to the improper argument must be made at the time of the argument. *Valencia v. State*, 946 S.W.2d 81, 83 (Tex.Crim.App.1997); *Johnson v. State*, 604 S.W.2d 128, 132–33 (Tex.Crim.App. [Panel Op.] 1980); *Joines v. State*, 482 S.W.2d 205, 208 (Tex.Crim. App.1972). An objection to the state's argument made after the jury has retired does not preserve error. *Castillo v. State*, 362 S.W.2d 320, 322 (Tex.Crim.App.1962).

Here, defense counsel objected to the State's closing argument following what constitutes a full page in the record of further argument by the State and after the jury was excused to deliberate. Therefore, the error in the State's argument, if any, is not properly before this Court for review.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Mumphrey cites several alleged errors as rendering trial counsel's performance deficient.[6] He concedes that for many such alleged errors there may have been a tactical reason for those acts or omissions. He focuses his argument, however, on trial counsel's failure to "protect the record" by making an offer of proof regarding the excluded evidence.

In order for an appellant to show he or she received ineffective assistance of coun-

---

6. We concentrate our analysis on those errors noted in Mumphrey's brief written by appellate counsel. We agree with the State's position that the specific errors raised in Mumphrey's pro se handwritten affidavit attached to his appellate counsel's brief should not be considered. Mumphrey has no right to hybrid representation. *Landers v. State*, 550 S.W.2d 272, 280 (Tex.Crim.App.1977); *Reeves v. State*, 46 S.W.3d 397, 400–01 (Tex.App.-Texarkana 2001, pet. dism'd).

sel, such appellant must satisfy a two-pronged test: 1) it must be shown that counsel's performance fell below an objective standard of reasonableness by identifying acts or omissions showing that counsel's performance was deficient; and 2) it must be shown that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986).

Having concluded Mumphrey's trial counsel did preserve error with respect to at least two of the three instances of which Mumphrey complains, we must determine whether counsel's performance was deficient based on his failure to preserve error with respect to evidence of Reedy and Mumphrey's reconciliation after the assault.

■■■ We hold the trial court's determination that evidence of reconciliation was irrelevant was not an abuse of discretion, even if the error would have been properly before us. Having failed to demonstrate that evidence of reconciliation was admissible in this context, Mumphrey has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness and, subsequently, would be unable to demonstrate a reasonable probability that, but for the failure, the trial's outcome would have been different.[7] This point of error is overruled.

## IV. SUMMARY AND CONCLUSION

Mumphrey's claimed error in allowing Strickhausen to express an opinion on

7. We note the Texas Court of Criminal Appeals' decision in *Bone v. State,* 77 S.W.3d 828 (Tex.Crim.App.2002). In *Bone,* the court concluded that, under ordinary circumstances, the record on direct appeal will not

whether an assault had occurred was not preserved. Reedy's statements to Strickhausen at the scene and the videotaped statements she made within one hour of the assault were admissible under the excited utterance exception to the rule against hearsay. The trial court's refusal to allow Mumphrey to replay the videotape was not an abuse of discretion. Neither was it an abuse of discretion to exclude evidence Reedy was suspicious that Mumphrey had another girlfriend or that Reedy had assaulted Mumphrey. Complaint about the exclusion of evidence that Mumphrey and Reedy reconciled after the assault was not preserved for our review. Mumphrey also failed to preserve his complaint concerning the State's closing argument. Despite the failures to preserve alleged error, Mumphrey received effective assistance of counsel.

We affirm the judgment.

be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Id.* at 833.