Affirmed and Opinion filed August 9, 2005









Affirmed
and Opinion filed August 9, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS. 14-04-00442-CR 

         14-04-00443-CR

____________

 

MICHAEL GEORGE
LAHOOD,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause Nos. 960,494;
960,495

 



 

O P I N I O N








Appellant, Michael LaHood, appeals from
his convictions for aggravated kidnapping and aggravated sexual assault.  After finding him guilty, the jury assessed
punishment at thirty years=
imprisonment.  On appeal, appellant
contends that the trial court erred in (1) failing to sua sponte conduct an
inquiry into his competency to stand trial, (2) permitting the prosecutor to
impeach his testimony with felony convictions that were more than ten years
old, and (3) refusing to allow defense counsel to ask the complainant about her
most recent drug use.  Appellant further
argues that he received ineffective assistance of counsel because his counsel
failed to (1) request an inquiry into his competency, (2) request a jury
submission on the doctrine of release to a safe place, and (3) object to
improper jury argument.  We affirm.

I. 
Background

Complainant, Shelly Boyd Mitchell,
testified that she and appellant began living together in Aransas Pass in
August 2003.  She said that they spent
their time fishing and taking illegal drugs and that they shoplifted and
borrowed money when they needed things.

In September 2003, they discussed leaving
Aransas Pass, but Mitchell told appellant she did not think it was a good
idea.  One day, appellant packed Mitchell=s car with fishing
gear and dirty clothes, leading Mitchell to believe they were going to fish and
wash laundry.  When she realized
appellant intended to take her out of town, Mitchell told him that she did not
want to go, and he replied that Ait wasn=t a question of
whether [she] wanted to or not. [She] was going.@  As they drove, she insisted that she wanted
out of the car, but he wouldn=t stop and became
very angry.  She tried to open the door
and get out while the car was moving, but he pulled her back.  She tried several more times to get out of
the car, but he told her that he would kill her if she didn=t Amind@ him.  Appellant made various threats to Mitchell,
including that he would cut her throat, beat her beyond recognition, and cut
her tattoos out so that no one would recognize her.  Appellant physically attacked Mitchell by
pulling her hair, beating her head into the car=s console, biting
her arms, and choking her.  Mitchell was
terrified and believed that appellant would carry out some of these
threats.  She said that he had a knife
with him.  She made several more attempts
to escape, including by putting the car in park, trying to take the keys,
trying to climb out the window, and telling him to pull over.  Near Wharton, appellant stopped the car, gave
Mitchell some pills, tied her wrists together, and told her to go to sleep.








Appellant told Mitchell that they were
going to get Agood dope.@  She testified that at this point she was sick
and tired, and she told him she didn=t want any Adope.@  Once they arrived in Houston, appellant
stopped in a parking lot, made Mitchell lie down in the back seat, and tied her
ankles together.  Mitchell said that she
felt like she could have gotten out of the car at that time but that she couldn=t have gotten away
because she was not familiar with the Houston area.  Appellant then drove to another parking lot
and sexually assaulted her.  Afterwards,
appellant fell asleep next to Mitchell in the back seat of the car.  She later woke appellant, and they checked
into a motel room.  They made several
trips to buy alcohol and drugs.  At one
point, when they exited the motel room to go buy drugs, they saw a police car
near the motel, and appellant and Mitchell hurried back inside the room.  When appellant and Mitchell later got in
their vehicle to drive away, police pulled them over because of a faulty
inspection sticker.  Mitchell told the
officers that she had been kidnapped, and appellant was arrested.

II. 
Inquiry into Competency

In his first issue, appellant contends
that the trial court erred in failing to sua sponte inquire into his competency
to stand trial because he had a history of mental illness, made outbursts
during trial, and complained that he had not received his medication and had
difficulty understanding the proceedings. 
We review a trial court=s failure to
conduct a competency inquiry under an abuse of discretion standard.  Moore v. State, 999 S.W.2d 385, 393
(Tex. Crim. App. 1999).  A defendant is
presumed competent to stand trial and shall be found competent to stand trial
unless proven incompetent by a preponderance of the evidence.  Tex.
Code Crim. Proc. Ann. art. 46B.003(b) (Vernon Supp. 2004-05).  A defendant is incompetent to stand trial if
he does not have (1) sufficient present ability to consult with his attorney
with a reasonable degree of rational understanding, or (2) rational as well as
factual understanding of the proceedings against him.  Id. art. 46B.003(a).








If, during trial, evidence is brought to
the attention of the trial court from any source raising a bona fide doubt as
to the defendant=s competency, the court must conduct an
informal inquiry outside the jury=s presence to
determine whether there is evidence to support a finding of incompetency to
stand trial.  Id. art. 46B.004; McDaniel
v. State, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003).  In the inquiry, the court must determine
whether there is Asome evidence@ to support a
finding of incompetency, and, if the court so finds, it must then commence a
hearing before a jury.  McDaniel,
98 S.W.3d at 710; see also Tex.
Code Crim. Proc. Ann. arts. 46B.005(b), 46B.051.  The requirements of each step must be
fulfilled before the next step becomes applicable.  McDaniel, 98 S.W.3d at 710‑11.  The naked assertion, AI am incompetent,@ is not sufficient
without supporting evidence to require either an inquiry by the court or a
hearing before a jury.  Id. at
711.  Evidence capable of creating a bona‑fide
doubt about a defendant=s competency may come from the trial court=s own
observations, known facts, evidence presented, motions, affidavits, or any
other claim or credible source.  Brown
v. State, 129 S.W.3d 762, 765 (Tex. App.CHouston [1st
Dist.] 2004, no pet.).  Evidence is
usually sufficient to create a bona‑fide doubt if it shows recent, severe
mental illness, at least moderate retardation, or truly bizarre acts by the
defendant.  McDaniel, 98 S.W.3d at
710.  If evidence warrants a competency
hearing, and the trial court denies such a hearing, the defendant is deprived
of his constitutional right to a fair trial. 
See Pate v. Robinson, 383 U.S. 375, 385 (1966).








Appellant contends that he made in-court
statements that constituted evidence of his incompetency to stand trial.  Appellant testified on four consecutive
days.  He does not reference any
statements he made on the first day. 
Indeed, on this first day of testimony he was responsive, remembered
details, and spoke intelligibly.  On the
second day, before the jury entered the courtroom, appellant said AI need my
medicine.@ 
When his testimony began, appellant said that he did not get his Apsych meds again
today@ and that he was
having trouble understanding things. 
Appellant then testified without any problems for a period of time
before stating AI need my medication . . . .  I am so uncomfortable.  I=m seeing the
lights blink.  I take medication for
manic depression, schizophrenia. . . .  I
haven=t had it.  This is not right.@  The judge excused the jury and recessed the
proceedings for the day.

Before the jury entered the courtroom on
appellant=s third day of testimony, he complained to
the judge that someone he wanted subpoenaed had not been subpoenaed, and he
claimed he was Agetting railroaded.@  Once the jury was brought in, appellant again
testified without any apparent difficulty. 
In response to defense counsel=s questioning,
appellant explained that he had difficulty testifying on the prior day because
he had not been given his medication.  He
described his conditions and medication in some detail, and explained that he
was much calmer on that day because he had received his medications the night
before.[1]  Later that day, during the prosecutor=s closing
argument, appellant made several brief interjections, which drew neither an
objection from the prosecutor nor an admonishment from the trial judge.

The trial moved into the punishment phase
on the fourth day.  When a witness was
asked about another witness=s drug use,
appellant interrupted, AShelley [complainant] is using drugs right
now.@  Shortly thereafter, the prosecutor asked the
witness AHow many mistakes
does he get to make? . . .  How many
assaults does he get to . . . commit before we say enough?@  Appellant again interrupted, ANot guilty.  Outright lie. . . .  Find me in contempt.  It=s a lie.@  The jury was removed from the courtroom, and
the judge and the witness calmed appellant down.  When the jury returned, appellant testified
regarding his emotional problems, prescription medications, and substance abuse
problems.








The fact that appellant made outbursts
during trial is not evidence of an inability to communicate with counsel or to
appreciate the proceedings against him.  Moore,
999 S.W.2d at 395.  Although
inappropriate, the outbursts were immediate and logical responses to statements
made or questions asked during trial.  Id.  If such actions were enough to demonstrate
incompetency, a defendant could easily avoid prosecution through immature
behavior.  Id.  Similarly, the fact that he may have been on
psychiatric medication during trial and had a history of mental problems did
not mandate a competency inquiry absent evidence of a present inability to
communicate or understand the proceedings. 
See id. at 395-96.

The only time during trial that there was
any indication appellant was having difficulty understanding the proceedings
was on his second day of testimony when he stated that he was uncomfortable and
seeing the lights blink and had not had his medication.  The judge immediately recessed the
proceedings.  The next day, appellant
continued testifying without any apparent difficulty, and he explained that he
was doing much better because he had received his medication the night
before.  Because it appears from the
record that the trial court acted appropriately in dealing with appellant=s difficulty in
testifying on the second day, and there is no indication in the record that
appellant did not understand the proceedings or had trouble communicating
during any other portion of the trial, we find that the trial court did not
abuse its discretion in failing to sua sponte inquire into appellant=s competency to
stand trial.[2]  Accordingly, appellant=s first issue is
overruled.

III. 
Impeachment








In his fifth issue, appellant contends
that the trial court erred in permitting the prosecutor to impeach his
testimony with felony convictions that were more than ten years old.  Specifically, appellant complains that the
State was permitted to introduce evidence that he was convicted in 1987 of
burglary of a nonhabitation and credit card abuse.[3]  We review admission of this evidence under an
abuse of discretion standard.  Lucas
v. State, 791 S.W.2d 35, 51 (Tex. Crim. App. 1989).

Under Rule 609 of the Texas Rules of
Evidence, evidence that a witness has been convicted of a crime is admissible
to attack the witness=s credibility if the crime was a felony or
involved moral turpitude and the court determines that the probative value of
the evidence outweighs its prejudicial effect. 
Tex. R. Evid. 609(a).  However, evidence of a conviction is not
admissible under the rule if more than ten years has elapsed since the date of
the conviction, or the release from confinement if later, unless the probative
value substantially outweighs the prejudicial effect.  Id. 609(b).  In short, the general rule is that if a
conviction is under ten years old, the test for admission is whether the
probative value outweighs the prejudicial effect, and if the conviction is over
ten years old, the test is whether the probative value substantially outweighs
the prejudicial effect.  Id. 609; Lucas,
791 S.W.2d at 50-51 & n.9; Jackson v. State, 50 S.W.3d 579, 591
(Tex. App.BFort Worth 2001, pet. ref=d).

The Court of Criminal Appeals has created
an exception or interpretation of the general rule such that Rule 609(b)=s Asubstantially
outweighs@ test will not be applied to a prior
conviction over ten years old if the witness=s lack of
reformation is shown by evidence of an intervening conviction for a felony or a
misdemeanor involving moral turpitude.  Lucas,
791 S.W.2d at 51; Jackson, 50 S.W.3d at 591.  Here, appellant acknowledged at trial that he
was convicted in 1999 and again in 2003 of misdemeanor theft.[4]  Theft is a crime of moral turpitude.  Oldham v. State, 5 S.W.3d 840, 849
(Tex. App.CHouston [14th Dist.] 1999, pet. ref=d).  Thus, there was evidence of appellant=s lack of
reformation, and whether appellant=s burglary and
credit card abuse convictions were admissible is properly analyzed under Rule
609(a)=s Aoutweighs@ test.








In determining whether the probative value
of the evidence outweighs the prejudicial effect, courts look to the factors
proffered by the Court of Criminal Appeals in Theus v. State: (1) the
impeachment value of the prior crime; (2) the temporal proximity of the past
crime relative to the charged offense and the witness=s subsequent
history; (3) the similarity between the past crime and the offense being
prosecuted; (4) the importance of the defendant=s testimony; and
(5) the importance of the credibility issue.   
845 S.W.2d 874, 880 (Tex. Crim. App. 1992).

In the present
case, each of the factors leans towards admission.  Regarding the first factor, the impeachment
value of prior crimes involving deception or moral turpitude is greater than
for crimes involving violence.  Theus,
845 S.W.2d at 881; Deleon v. State, 126 S.W.3d 210, 215 (Tex. App.CHouston [1st
Dist.] 2003, pet. dism=d.). 
Further, violent crimes are likely to have more of a prejudicial
effect.  Theus, 845 S.W.2d at 881;
Deleon, 126 S.W.3d 210 at 215. 
Burglary and credit card abuse are crimes of deception rather than of
violence.  See Tex. Pen. Code Ann. ' 32.31 (Vernon
Supp. 2004) (credit card abuse); White v. State, 21 S.W.3d 642, 647
(Tex. App.CWaco 2000, pet ref=d)
(burglary).  Accordingly, the first
factor favors admission.

As discussed
above, because there was evidence of intervening convictions suggesting
appellant has not reformed his conduct, the second factor, concerning temporal
proximity, can also be read as favoring admission.  See Rodriguez v. State, 129 S.W.3d
551, 560 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d); Jackson v.
State, 11 S.W.3d 336, 340 (Tex. App.CHouston [1st
Dist.] 1999, pet. ref=d).

The third factor
concerns the similarity between the past crimes and the offenses being
prosecuted.  The present case involves
charges of aggravated kidnapping and aggravated sexual assault, neither of
which is remotely similar to the prior convictions for burglary of a
nonhabitation and credit card abuse. 
Thus, factor three leans in favor of admission because there is a
lessened possibility of prejudice.  See
Theus, 845 S.W.2d at 881.








Factors four and
five concern, respectively, the importance of the defendant=s testimony and
the importance of the credibility issue. 
As the court stated in Theus, AWhen the case
involves the testimony of only the defendant and the State=s witness, the
importance of the defendant=s credibility and
testimony escalates.  As the importance
of the defendant=s credibility escalates, so will the need
to allow the State an opportunity to impeach the defendant=s credibility.@  Id. 
As often happens in sexual assault cases, there were no eyewitnesses in
this case other than the parties involved. 
Therefore, appellant=s testimony and
the credibility issue were crucial elements at trial, and allowing impeachment
of the witnesses= testimonies was appropriate.  See id.

In summary, each
of the Theus factors favors admission of the prior convictions for
impeachment purposes.  Therefore, the
trial court did not err in admitting evidence of the prior convictions.  Appellant=s fifth issue is
overruled.

IV.  Exclusion of Evidence

In his sixth
issue, appellant contends that the trial court erred in refusing to permit
defense counsel to ask Mitchell about her most recent drug use.  During trial, Mitchell testified that she had
an addiction to cocaine, had used other drugs, and still used drugs
occasionally; however, when defense counsel twice asked Mitchell about her most
recent drug use, the State objected on relevance grounds, and the court
sustained the objection.  Appellant
contends that the court=s ruling violated his right to
confrontation under the Sixth Amendment. 
U.S. Const. amend. VI.








In order to
preserve a complaint regarding the exclusion of evidence, a defendant generally
must make an offer of proof or file a bill of exceptions to make the substance
of the evidence known.  See Tex. R. Evid. 103(a).  Otherwise, it is usually impossible for the
appellate court to assess whether the exclusion was erroneous or harmful.  Ludlow v. DeBerry, 959 S.W.2d 265, 270
(Tex. App.CHouston [14th Dist.] 1997, no writ); Goode, Wellborn & Sharlot, Guide to the Texas Rules of Evidence ' 103.3 (3rd ed.
2002); see also Fox v. State, 115 S.W.3d 550, 558-59 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d) (citing Tex. R. Evid. 103(a) for the proposition that when the
content of the evidence is apparent from the context a formal offer of proof is
not required).  When excluded evidence
goes generally to a witness=s credibility,
including any impairment possibly effecting credibility, the offer-of-proof
burden is less rigid.  Virts v. State,
739 S.W.2d 25, 29 (Tex. Crim. App. 1987) (plurality opinion); Mumphrey v.
State, 155 S.W.3d 651, 662 (Tex. App.CTexarkana 2005,
pet. ref=d); Recer v.
State, 821 S.W.2d 715, 717 (Tex. App.CHouston [14th
Dist.] 1991, no pet.).  In that
situation, the defendant must merely establish the general subject matter on
which he or she desired to examine the witness and, if challenged, show on the
record why such should be admitted into evidence.  Virts, 739 S.W.2d at 29; Mumphrey,
155 S.W.3d at 662; Recer, 821 S.W.2d at 717.

On appeal, appellant
contends that the evidence may have shown that appellant was under the
influence of drugs at the time of her testimony.  But at trial, counsel made no such
explanation; indeed, counsel offered no explanation as to what the testimony
might show or why it should be admitted. 
See Mumphrey, 155 S.W.3d at 662 (holding issue was
properly preserved where defense counsel stated that the evidence sought was
relevant to the witness=s credibility and her tendency to imagine
things).  Thus, nothing was preserved for
review.  Appellant=s sixth issue is
overruled.

V.  Assistance of Counsel








In his second,
third, and fourth issues, appellant contends that he received ineffective
assistance of counsel because counsel failed to (1) request an inquiry into his
competency to stand trial, (2) request a jury submission on the doctrine of
release to a safe place, and (3) object to improper jury argument.  The Sixth Amendment to the United States
Constitution guarantees the right to reasonably effective assistance of counsel
in criminal prosecutions.  U.S. Const. amend. VI; McMann v.
Richardson, 397 U.S. 759, 771 n.14 (1970). 
In reviewing an ineffective assistance claim, an appellate court Amust indulge a
strong presumption that counsel=s conduct [fell]
within the wide range of reasonable professional assistance; that is,
[appellant] must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy.@  Strickland v. Washington, 466 U.S.
668, 689 (1984).  Under the two‑pronged
Strickland test, in order to demonstrate ineffective assistance of
counsel, a defendant must first show that counsel=s performance was
deficient, i.e., that his assistance fell below an objective standard of
reasonableness; second, a defendant must affirmatively prove prejudice by
showing a reasonable probability that, but for counsel=s unprofessional
errors, the result of the proceeding would have been different.  Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999).  Any allegation
of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.  Id. at 813.  Appellant bears the burden of proving by a
preponderance of the evidence that counsel was ineffective.  Id. 
In the majority of cases, the record on direct appeal is simply
undeveloped and cannot adequately reflect the alleged failings of trial
counsel.  Jackson v. State, 973
S.W.2d 954, 957 (Tex. Crim. App. 1998). 
This is particularly true when the alleged deficiencies are matters of
omission and not of commission that may be revealed in the record.  Id. 
A proper record is best developed in a habeas corpus proceeding or in a
motion for new trial hearing.  Jensen
v. State, 66 S.W.3d 528, 542 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d). The case before us is not a habeas
corpus proceeding, and there was no hearing on the motion for new trial.

A.  Incompetency to Stand Trial








In his second
issue, appellant contends that he received ineffective assistance of counsel
because his counsel failed to request an inquiry into his competency to stand
trial.  He asserts that A[c]ounsel was
apparently aware of Appellant=s diminished
mental state@; however, since there was no hearing on
the motion for new trial, the record contains no indication of counsel=s knowledge beyond
the occurrences during trial, detailed under issue one above.  As discussed, the evidence cited by appellant
was not sufficient to warrant an inquiry into his competency.  See Brown, 129 S.W.3d at 767
(overruling complaint alleging ineffectiveness of counsel for failing to
request competency inquiry because there was no evidence defendant was
incompetent); Hall v. State, 766 S.W.2d 903, 906-07 (Tex. App.CFort Worth 1989,
no pet.) (finding counsel was not ineffective for failing to request competency
inquiry for substantially the same reasons as to why trial court did not err in
failing to sua sponte order competency inquiry).  Further, appellant asserts that counsel did
not subpoena any of his medical or jail records and she did not provide any
expert testimony regarding his mental health. 
However, the record is also silent as to what information defense
counsel might or might not have obtained or as to what any expert would have
had to say about appellant=s condition.  See Brown, 129 S.W.3d at 767 (refusing
to speculate on whether counsel investigated competency issue in light of a
silent record).  Accordingly, on the
record before us, appellant cannot rebut the presumption that his counsel was
effective; thus, he cannot satisfy the first prong of Strickland.  See Thompson, 9 S.W.3d at 812.  His second issue is overruled.

B.  Closing Argument

In his third
issue, appellant contends he received ineffective assistance because his
attorney failed to object to improper closing argument by the prosecutor.  Appellant had previously worked as an
electrical contractor.  During closing
argument in the punishment phase, the prosecutor made a point regarding the
safety of the community and then asked the jury ADo you really want
to wake up 20 years from now, having worked [sic] on your house, and have
[appellant] come in as the electrical contractor?  Are you going to feel safe while that=s going on?@  Defense counsel did not object to these
statements.








There are four
permissible areas of jury argument: (1) summations of the evidence;  (2) reasonable deductions from the
evidence;  (3) responses to the defendant=s argument;  and (4) pleas for law enforcement.  Rocha v. State, 16 S.W.3d 1, 21 (Tex.
Crim. App. 2000).  Arguments similar to
the prosecutor=s in this case have consistently been held
to constitute proper pleas for law enforcement and reasonable deductions from
evidence demonstrating that the defendant had a violent nature.  See, e.g., Starvaggi v. State, 593
S.W.2d 323, 328 (Tex. Crim. App. 1979) (AI just say this,
that I hope he doesn=t come knocking on one of your doors at
eight o=clock one evening.@); Moyer v.
State, 948 S.W.2d 525, 531 (Tex. App.CFort Worth 1997,
pet. ref=d) (AHow could any of
you go to sleep at night wondering whether he was on the street?@); Fields v.
State, 932 S.W.2d 97, 111 (Tex. App.CTyler 1996, pet.
ref=d) (AIf you folks want
to go home tonight and sleep, if you want to be sleeping fifteen years from now
or twenty years from now or thirty years from now . . . you know what you need
to do.@); Lopez v.
State, 860 S.W.2d 938, 942-43 (Tex. App.CSan Antonio 1993,
no pet.) (A[Y]ou know what he can do.  And you decide what to do with him.  Does he walk out with you? . . .  Or does he go to [prison] for as long as you
can possibly put him away?@).

Here, the record
contains detailed evidence of the violent crimes appellant committed against
Mitchell; there was also evidence that appellant had previously restrained and
physically and sexually assaulted another woman.  We hold that the prosecutor=s argument was a
proper plea for law enforcement and a reasonable deduction from the
evidence.  Thus, defense counsel=s failure to
object to the argument did not constitute ineffective assistance of
counsel.  See King v. State, 649
S.W.2d 42, 45 (Tex. Crim. App. 1983); Richards v. State, 912 S.W.2d 374,
380 (Tex. App.CHouston [14th Dist.] 1995, pet. ref=d).  Appellant=s third issue is
overruled.

C.  Jury Instruction








In his fourth
issue, appellant contends that he received ineffective assistance because his
attorney failed to request a jury submission regarding voluntary release to a
safe place.  Under Penal Code section
20.04(d), a defendant accused of aggravated kidnapping may raise an issue in
the punishment phase as to whether he voluntarily released the victim in a safe
place.  Tex.
Pen. Code Ann. ' 20.04(d) (Vernon 2003).  If the defendant proves the issue by a
preponderance of the evidence, the offense is classified as a second degree
felony as opposed to a first degree felony. 
Id. ' 20.04(c), (d).[5]

During the charge
conference, defense counsel appeared to agree with the prosecutor that there
was no evidence warranting a Asafe release@ submission.  On appeal, in support of his safe release
argument, appellant cites to evidence that: (1) the arresting officers saw
appellant and Mitchell exit a motel room and then turn and go back in upon
seeing the officers; (2) appellant and Mitchell appeared to be avoiding the
officers; (3) no weapons were found in the room when it was searched after the
arrest; (4) there was a telephone in the motel room; (5) the police pulled
appellant and Mitchell over before arresting appellant; and (6) appellant left
Mitchell alone in the room on two occasions while she pretended to sleep; he
went to the car and then returned to the room.








In order to raise
the issue of voluntary release to a safe place, a defendant must offer some
evidence that he or she actually released the victim.  See Ballard v. State, 161 S.W.3d 269,
273 (Tex. App.CTexarkana 2005, pet. filed) (A[T]he application
of Section 20.04(d) should focus on whether the defendant performed an act of
release . . . .@); Harrell v. State, 65 S.W.3d 768,
772 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d) (AAppellant, in
order to avail himself of the mitigating effect of section 20.04(d), must first
have performed >some overt and affirmative act= which brought
home to his victim that she had been >fully released
from captivity.=@) (quoting in part
Wiley v. State, 820 S.W.2d 401, 411 (Tex. App.CBeaumont 1991, no
pet.)).  The first four pieces of
evidence cited by appellant may have had some relevance to the question of
appellant=s guilt as to the aggravated kidnapping
charge; however, this evidence does not demonstrate that appellant ever
released Mitchell.  Although the fifth
piece of evidence, regarding the vehicle stop by police officers, may have
relevance to Mitchell=s release from appellant=s control, it was
clearly at the intervention of the officers and thus cannot be deemed Avoluntary@ on appellant=s part.  See Brown, 98 S.W.3d at 188.  Lastly, appellant=s apparently brief
absences from the room to go to the car and back while he thought Mitchell was
sleeping cannot be considered A>overt and
affirmative act[s]= which brought home to his victim that she
had been >fully released from captivity.=@  Harrell, 65 S.W.3d at 772 (quoting in part
Wiley, 820 S.W.2d at 411).

Because appellant
failed to provide any evidence that would have warranted a jury submission
regarding voluntary release to a safe place, he has also failed to demonstrate
that his counsel was deficient in failing to request such a submission.  Accordingly, he has not satisfied the first
prong of Strickland.  See
Thompson, 9 S.W.3d at 812. Accordingly, we overrule appellant=s fourth issue.

The trial court=s judgment is
affirmed.

 

 

 

 

 

/s/      Adele
Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Opinion filed August 9, 2005.

Panel consists of
Chief Justice Hedges and Justices Fowler and Frost.

Publish C Tex. R. App. P. 47.2(b).











[1]  Contrary to
appellant=s assertion on appeal, there is no mention at this
point in the record of appellant=s not
understanding all that was going on at trial.





[2]  We further
note that the trial court was in a much better position than are we to assess
appellant=s demeanor both during his alleged period of confusion
and during the rest of the trial. 
Additionally, beyond his own testimony, appellant cites no other
evidence regarding incompetency.  See
McDaniel, 98 S.W.3d at 711 (suggesting that a defendant=s bare allegation of incompetency is not sufficient to
raise a bona fide doubt requiring inquiry).





[3]  Appellant was
convicted of burglary of a nonhabitation on March 3, 1987, and his sentence was
probated.  On November 12, 1987,
appellant=s probation was revoked, and he was ordered confined
for four years.  Appellant was convicted
of credit card abuse on October 23, 1987, and was sentenced to five years= incarceration. 





[4]  During
cross-examination, appellant expressly admitted the 2003 conviction, but when
asked about whether he Adid time@ for the
1999 conviction, he stated AI could have.  I
might have.  If it was a misdemeanor
theft from a Home Depot, I think I could have done that.@  Later, during
re-direct, appellant stated he plead guilty to the Amisdemeanor thefts@
mentioned by the prosecutor because he was guilty.  The prosecutor had only mentioned two such
theft convictions, occurring in 1999 and in 2003.





[5]  The Court of Criminal Appeals has
determined that a narrow rather than a broad definition of Avoluntarily@ applies to section 20.04(d), so
that to be voluntary, the release must not have been occasioned by rescue by
the police or others or escape by the victim, among other things.  Brown v. State, 98 S.W.3d 180, 183-88
(Tex. Crim. App. 2003).  Factors relevant
to determining whether the place of release can be considered safe include: (1)
the remoteness of the location; (2) the proximity of authorities or persons who
could assist the victim; (3) the time of day; (4) climatic conditions; (5) the
condition of the victim; (6) the character of the location or surrounding
neighborhood;  and (7) the victim=s familiarity with the location or
surrounding neighborhood.  Nolan v.
State, 102 S.W.3d 231, 238 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).