David Lewis WOODS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00320–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 16, 1999.

Decided Jan. 26, 2000.

Rehearing Overruled Feb. 23, 2000.

Gary L. Waite, Paris, for appellant.

Kerye Ashmore, Lamar County Attorneys Office, Paris, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

David Lewis Woods was convicted by a jury of burglary of a building. Woods was sentenced to twenty years' confinement and a $10,000 fine. On appeal, Woods contends that the trial court erred in permitting the State to bolster unimpeached evidence.

Buddy's Supermarket in Paris, Texas, was burglarized on August 8, 1997. The burglar broke a glass door at the front of the store and entered the building, setting off a burglar alarm. When the police department responded, they found the shattered glass and cigarettes scattered inside and outside the building. The owners of the store, Glen and Sondra Hill, were notified of the break-in and went to the store.

After the Hills arrived, they informed the officers that there was a video surveillance camera operating at the time and gave the officers the videotape from the recorder. The videotape shows the burglar going behind the counter area and grabbing racks of cigarettes. An investigator with the Paris Police Department accidentally recorded over the rest of the burglary.

There were no eyewitnesses to the burglary. The police department did not take fingerprints at the crime scene. The only evidence admitted at trial to link Woods with the crime was the videotape, which was viewed in court by the jury.

Woods entered a plea of not guilty. At trial, six witnesses testified that the person on the videotape was the defendant sitting in court. The defense objected each time the prosecution asked a witness to identify Woods as the suspect on the videotape.

Three of the witnesses were Paris police officers. There was no testimony that the three had ever seen Woods before the trial. All three were asked if they had watched the tape. After an affirmative answer, all three were asked if the person they saw on the tape was in the courtroom.

All three said yes, and were then asked to point out the person, which all three did.

Glen Hill testified that he had seen the person on the videotape before the burglary. Sondra Hill testified unequivocally that she had seen the person in the store on the tape the evening before the burglary and that his unusual behavior caught her attention. Both were then asked if they had watched the tape, and both answered that they had. Both were then asked if the person on the tape was in court. When they answered yes, both were asked to identify the suspect in court, which they did.

The last witness was Annette Granbury, a parole officer employed by the State of Texas. Granbury was contacted by the police department to watch the videotape to find out if she knew the suspect. Granbury testified that she recognized the person on the videotape and identified the suspect as David Lewis Woods.

On appeal, Woods contends that allowing all six witnesses to testify that the person on the videotape was the person sitting in court is improper bolstering of the State's evidence. At trial, when each of the six witnesses testified, Woods's attorney objected to the testimony as bolstering and invading the province of the jury.

Bolstering occurs when evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party.[1] Bolstering also occurs when the *sole* purpose of evidence is to "convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of [a] fact that is of

consequence to the determination of the action more or less probable than it would be without the evidence.'"[2]

The general concept of the prohibition against bolstering predates the Texas Rules of Evidence, but it was not codified. The Texas Court of Criminal Appeals has stated that the only bolstering provisions contained in the former Rules of Criminal Evidence were TEX.R.CRIM. EVID. 608(a) and 612(c) (Vernon 1997) (now TEX.R. EVID. 608(a) and 613(c)).[3] Rule 608(a) allows opinion or reputation evidence as to the character of a party's own witness for truthfulness after an attack on the witness's credibility by the opposing party.[4] Rule 613(c) prevents the use of prior consistent statements by a witness for the sole purpose of enhancing the witness's credibility.[5] Neither Rule is applicable to the present case.

The testimony at trial violates neither Rule 608(a) nor Rule 613(c), because the testimony objected to concerned neither a witness's character for truthfulness nor a prior consistent statement. The testimony in the instant case concerns opinion testimony by a lay witness.[6] The concurrence takes the position that identity is a fact, not an opinion. In *United States v. Henderson*,[7] the court characterizes the identity testimony as an opinion that the person shown in the bank surveillance photograph was the defendant.

First, we determine if evidence from a lay witness offering an opinion based on the same evidence the jury is viewing, without further qualifications, is admissible. We conclude that it is not. Texas Rules of Evidence 701 deals with opinion testimony by a lay witness. This Rule provides that such opinions are admissible if the testimony is (a) rationally based on

1. *Rousseau v. State*, 855 S.W.2d 666, 681 (Tex.Crim.App.1993).

2. *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim.App.1993).

3. *Id.* at 820.

4. TEX.R. EVID. 608(a).

5. TEX.R. EVID. 613(c).

6. TEX.R. EVID. 701.

7. 68 F.3d 323 (9th Cir.1995).

the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact issue.

Three of the witnesses in the present case based their testimony solely on the viewing of the videotape which was before the court, so it was based on the witness's perception of the videotape and the appearance of the defendant who was sitting in court. However, there was nothing in the witnesses' testimony that was not readily observable by the twelve jurors.[8]

■ The witnesses were all asked if they watched the store surveillance videotape, and they answered affirmatively. The witnesses were then asked if the person they saw in the videotape was in the courtroom. Again, the witnesses answered affirmatively. The witnesses were asked to point out the person on the videotape, and they all pointed to the defendant. The witnesses were not asked who committed the crime, and none of them observed the crime. The witnesses were only asked their opinion of the identification of the person on the surveillance videotape, and their opinion was based solely on their personal perception of the videotape. There was no evidence indicating that Woods's appearance had changed between the time that the surveillance videotape was made and the time of trial, and furthermore there was no evidence that these witnesses had seen Woods before the trial, so they could not show that his appearance had changed.

8. The concurrence compares these witnesses to fact witnesses testifying as to the identity of a person they saw at a crime scene. If they had witnessed the defendant at a crime scene, they could certainly testify because they would have knowledge before them that the jury did not have, because they would have seen the actual crime. However, in the present case, these witnesses only saw pictures that were taken at the crime scene in the form of a videotape, which the jurors also saw. The concurrence only compares these witnesses to a person identifying his own signature or a person testifying that a gun looks like the same gun he saw at a crime, but again these witnesses were not comparable to

This testimony did not add to the information already before the jury in the form of the videotape. The videotape is a clear, black and white tape; the contrast in the tape is good. The camera was at eye level or slightly below. The person seen committing the crime is shown on the videotape for approximately thirty seconds. The suspect never directly faces the camera, but there are several three-quarter views of his face. The suspect appears to be only three or four feet from the camera, and at one point looked almost directly into the camera lens. The twenty-four eyes of the jurors and their twelve minds were capable of comparing the videotape and the defendant with just as much ability of perception as the witnesses.

There were three witnesses who are exceptions to the foregoing discussion, and whose testimony was admissible because it added something of relevance to the evidence before the jury and thus could have been helpful to the jury.

■ The first of these witnesses, Annette Granbury, Woods's parole officer, identified the person on the videotape as Woods to the police. Granbury had met Woods before the crime occurred. She was able to independently identify Woods as the person on the videotape based on prior familiarity. It was Granbury who had viewed the videotape and directed the police to Woods. On the basis that a person who has known a person previously would be in a better position to identify

those identifying their own signature or who were at a crime scene, but were comparable to anybody called off the street who knew nothing about the case and who viewed the same evidence before the jury with no more expertise than the jurors and reached a conclusion. The concurrence would allow the State to call a parade of people off the street with no familiarity as to anything in the case to come and reach an opinion. Then the defendant could go out and seek people from the street to testify that the defendant was not the person on the videotape. Such a proceeding would be a waste of judicial time and frustrating to jurors called for the purposes of making such a decision.

that person than the jurors, her identification has independent relevance.

■ Also, Sondra Hill's testimony added something of relevance to the evidence by her testimony that she had seen the defendant come into the store earlier on the day of the robbery and that he seemed to be acting peculiar. This evidence would suggest that Woods was casing the business prior to the burglary. The testimonies of Granbury and the Hills were admissible.

■ Allowing the other three witnesses to testify as to their opinion of the person on the videotape was not helpful to the jury because it provided them with nothing they did not already have and could not have done themselves. In other words, such evidence should be excluded whenever the trier of fact is being told that which it is entirely equipped to determine. Here, the jury was in possession of the same information as the witnesses and could fully understand the matter and draw the proper inferences. *See Roberts v. State*, 743 S.W.2d 708, 711 (Tex.App.-Houston [14th Dist.] 1987, pet. ref'd). As such, Rule 701 was violated by the admission of unhelpful lay witness opinion testimony.[9]

■ The next question to be asked, then, is if this error was properly preserved for appellate review. The general rule for presenting a complaint for appellate review is a showing in the record that the complaint was made to the trial court by a request, objection, or motion that was timely and sufficiently specific to make the trial court aware of the grounds of the complaint.[10]

The Texas Rules of Evidence do not set forth the proper objections for inadmissible evidence. The Rules require an objection that informs the trial court of the specific ground of the objection, if the specific ground was not apparent from the context.[11]

The term *bolstering* has a well-established meaning in the law. That legal terminology has been defined by numerous courts and is set forth in *Black's Law Dictionary*.[12] Even though that term is not used or defined in the present Rules of Evidence, the term is not without meaning. It communicates that it is evidence used to add credence or weight to other unimpeached evidence.

Under the present Rules, such evidence could be classified as lacking relevance.[13] However, the issue of identity was certainly relevant as the key issue in this case; however, what witnesses not acquainted with the case or the defendant opined about the defendant being the person on the film was not relevant. Furthermore, *bolstering* attempts to establish that a witness or source of evidence is worthy of credit without actually contributing to make the existence of a fact that is of consequence more or less probable than it would be without the evidence.

---

9. The concurrence takes the position that the testimony of these three witnesses is one of fact and not of opinion. It should be kept in mind that we are not addressing what would be fact issues for the jury, but rather, what would be opinion by a witness. As one expert says, the difference between what is fact testimony and what is opinion testimony becomes fuzzy. John F. Sutton, Jr. commentary to Rule 701, Texas Rules of Evidence Handbook at 631, 633 (3d ed.1998). In the present case, when the witnesses are asked to compare a man in a picture on a videotape to a man present in court to determine if the person in court is the same as the person in the film, this would call for opinions or conclusions based on a comparative observation.

10. Tex.R.App. P. 33.1(a)(1); *Tucker v. State*, 990 S.W.2d 261, 262 (Tex.Crim.App.1999).

11. Tex.R. Evid. 103(a)(1).

12. Black's Law Dictionary 167 (7th ed.1999).

13. Although the Texas Court of Criminal Appeals found in *Rousseau v. State* that certain evidence was not bolstering, but rather was irrelevant, the Court of Criminal Appeals went on to say that in the interest of justice, this matter would be addressed.

Bolstering in the present context, especially when accompanied by the objection that such evidence would invade the province of the jury, would also express a complaint of violations of TEX.R. EVID. 701. This Rule provides that a lay witness may give opinion or inference to the testimony if it is helpful to a clear understanding of the witnesses's testimony or the determination of a fact issue. As previously discussed, the testimony in question did not add any information beyond what the jury was capable of perceiving without such testimony.

In the context of the objection, invading the province of the jury was probably sufficient to inform the trial court as to the nature of the objection. The old Rule prohibiting a witness from testifying to an ultimate conclusion has been removed from the Rules, but the role of the jury is still fundamental to the system. For example, if witnesses were permitted to hear the testimony of other witnesses and then take the stand and testify as to which witness was telling the truth, this would clearly be invading the province of the jury. Likewise, in the present case, it was obvious from the testimony that the witnesses had no better knowledge or special knowledge than the jury had. These witnesses had done no more than the members of the jury, which was to watch the videotape and form an opinion that the person on the videotape was the same as the defendant on trial.

This Court recognizes the difficulty of formulating the proper objection when faced with an unusual type of evidence. The better objection would have been that the evidence was not helpful to the jury and was not based on personal knowledge of any matter not already before the jury. The objection would also have been more effective if it had been supported by an explanation as to why the opinion was not helpful to the jury. Even if error were properly preserved, however, we would be required to apply a harm analysis based upon TEX.R.APP. P. 44.2(b).

This Rule states that "Any [nonconstitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."[14] In applying the harmless error test, the appellate court is to view the whole proceeding, not just the error in isolation.[15] An error is harmless if the court, after examining the record as a whole, is reasonably reassured that the error did not influence the jury verdict or had but a slight effect.[16]

At trial, the only direct evidence linking Woods to the crime was the surveillance videotape. The tape, however, was strong evidence. While the defense attorney questioned the witnesses and attempted to throw some doubt on the validity of the videotape, the defense never questioned that the person on the videotape was Woods. Also, as discussed earlier, the surveillance videotape itself is clear. The jury had several good views of the man's face on the videotape to determine for themselves if he was the defendant on trial. Furthermore, the identification evidence of three of the witnesses was admissible because of their familiarity with Woods prior to the alleged offense. This added to the ability of the jury to identify Woods as being the person on the videotape, in addition to their ability to view the videotape.

Considering the record as a whole, the violation of Rule 701 either had no effect on the jury's verdict, or at most, had only a slight effect. Although there was an error committed at trial, no harm resulted from this error.

The judgment is affirmed.

---

14. TEX.R.APP. P. 44.2(b).

15. *Chisum v. State,* 988 S.W.2d 244 (Tex. App.-Texarkana 1998, pet. ref'd).

16. *Id.*

Concurring Opinion by Chief Justice CORNELIUS.

I agree that the judgment should be affirmed, but I write separately because I believe the majority opinion misinterprets bolstering and TEX.R. EVID. 701.

The testimony was not bolstering. Bolstering is the giving of evidence whose sole purpose is to vouch that a particular witness or source of evidence is worthy of belief, *without* substantially contributing to make the existence of a fact more or less probable. *Cohn v. State*, 849 S.W.2d 817, 819 (Tex.Crim.App.1993). As pointed out in the court's opinion in *Cohn v. State*, evidence that corroborates or enhances another witness's testimony or another source of evidence, if it also has a tendency to establish a fact of consequence, is not bolstering.

The witnesses here were testifying to what they saw in the reproduction of a crime scene. Their testimony tended to prove facts within their knowledge. The fact that this testimony also may have added to the credibility or reliability of the videotape, or any other evidence or witness's testimony, is immaterial. A party may prove a fact by as many witnesses as he chooses, subject only to control by the court for cumulative excess. Repetitious testimony is not bolstering so long as it tends to prove a fact in issue. Thus, the testimony here was not bolstering. *Compare: Marras v. State*, 741 S.W.2d 395, 404 (Tex.Crim.App.1987); *Roy v. State*, 608 S.W.2d 645, 649 (Tex.Crim.App. [Panel Op.] 1980); *Price v. State*, 923 S.W.2d 214, 217 (Tex.App.-Eastland 1996, pet. ref'd).

Three of the witnesses who testified they recognized Woods in the videotape testified that they had known or seen him before they viewed the videotape. There is no evidence showing whether the other three witnesses, who were police officers, had known or seen Woods previously. They simply said they "recognized" Woods in the videotape. If they had not seen him before, their testimony could possibly have been challenged on the ground that they did not have personal knowledge. Woods, however, did not object on that ground or ask to take the witnesses on voir dire to test their knowledge.

The testimony in question here also did not violate TEX.R. EVID. 701. The witnesses who testified were fact witnesses, and fact witnesses testifying to a crime scene may certainly identify who they saw in that crime scene. Even if the identification testimony of the witnesses can be considered to be opinions, Rule 701 was not violated because their identification was rationally based on their perception, and was helpful to the determination of a fact in issue. The fact that the jury could also see the same evidence did not prohibit the witnesses from testifying to what they saw. Witnesses are always allowed to testify to their personal knowledge or perceptions, even though the same evidence may have been introduced from another witness or source. For example, a witness may testify that a writing appears to be his own signature, even though the writing is in evidence for the jury to see and compare with other writings. Likewise, a witness may testify that a gun looks like the same gun he saw at a crime scene, even though other witnesses have also testified that the gun is the same as the one found at the crime scene.

Because it was not error to admit the testimony of the witnesses, there is no need for a harm analysis. I concur in the judgment, but not in the finding of error.