# NO. 12-10-00045-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *EFRAIN CONTRERAS,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Efrain Contreras appeals his conviction for aggravated sexual assault of a child. In his sole issue on appeal, he argues that the trial court erred by allowing impermissible testimony on the ultimate issue of guilt. We affirm.

## BACKGROUND

In May 2009, Orkuidia Miller, a City Finance employee, attempted to collect money for her employer at the home of the borrower. When she arrived, Miller observed Appellant, whom she had recognized from other unrelated transactions at her place of employment, touching a child's buttocks and "private parts" in a "very perverted way" while attempting to pull the child on top of him. She also saw a woman near Appellant and the child. According to Miller, the woman could see Appellant's conduct and seemed unconcerned.

Miller, however, was concerned and contacted police. Officer Mark Lee of the Tyler Police Department arrived at the home. It was determined that the child was the woman's six year old daughter. Based on Officer Lee's preliminary findings, a formal investigation ensued. Michelle Brock, a detective in the major crimes and crimes against children division of the Tyler Police Department, led the investigation. Nurse Susan Hinson conducted a sexual assault nurse

examination (SANE) on the child. Rebecca Cunio conducted a forensic interview with the child at the Children's Advocacy Center (CAC). During the interview, the child implicated Appellant in acts of sexual abuse against her. The child's mother was also interviewed and stated that she often prostituted herself while her children were lying on the same bed with her and the client. She also stated that Appellant was a frequent client and that she had observed him contact or penetrate her daughter's vagina with his penis on at least one other occasion.

Appellant was arrested and later indicted for the offense of aggravated sexual assault of a child. He entered a plea of "not guilty," and was later tried, convicted, and sentenced by a jury to life imprisonment. This appeal followed.

## IMPERMISSIBLE TESTIMONY

In his sole issue, Appellant argues that "the trial court erred by allowing impermissible testimony on the ultimate issue of guilt."

### Standard of Review

A trial court's decision to admit evidence over an objection is reviewed for abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). If the decision of the trial court is within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it will be upheld on appeal. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

### Applicable Law

To preserve an admissibility of evidence complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a); *see also Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000). Should a party fail to do so, any error in the admission of the evidence is not preserved and the complaint is waived. *Martinez,* 22 S.W.3d at 507. Moreover, to preserve a complaint for appellate review, the issue on appeal must comport with the objection raised at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

Rules 33.1 and 103 are "judge protecting" rules of error preservation. *See Martinez v. State*, 91 S.W.3d 331, 335 (Tex. Crim. App. 2002). The basic principle of both rules is that of "party responsibility." *Id.* Thus, the party complaining on appeal about a trial court's admission of evidence must, at the earliest opportunity, have done everything necessary to bring to the trial

2

court's attention the rule in question and its precise and proper application to the evidence in question. *Id.* at 335-36. Timely and specific objections inform the trial court of the basis of the objection and afford it the opportunity to rule on them, and also afford opposing counsel with the opportunity to remove the objection or supply other testimony. *Id.* at 336. Specific objections are necessary because they promote the prevention and correction of errors such that the judicial system and the parties are not burdened by unnecessary appeals and retrials when the error could have been corrected by a timely and specific objection at trial. *Id.*

An "invading the province of the jury" objection is no longer recognized as a valid objection. *Ortiz v. State*, 834 S.W.2d 343, 348 (Tex. Crim. App. 1992) ("invading the province of the jury" no longer valid objection to opinion testimony); *Mock v. State*, 848 S.W.2d 215, 225 (Tex. App.–El Paso 1992, pet. ref'd); *see also* TEX. R. EVID. 704. "The doctrine which prohibited testimony that would invade the province of the jury 'is and has been long dead' as a proposition of law." *Mays v. State*, 563 S.W.2d 260, 263 (Tex. Crim. App. 1978) (quoting *Boyde v. State*, 513 S.W.3d 588, 590 (Tex. Crim. App. 1974)).

The erroneous admission of expert testimony that the victim is telling the truth in a sexual assault case is nonconstitutional error. *See Barshaw v. State*, No. PD-1615-10, 2011 WL 2555661, at *1-2 (Tex. Crim. App. June 29, 2011) (slip. op.); *see also Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). A nonconstitutional error must be disregarded unless it affects the defendant's substantial rights. TEX. R. EVID. 103(a); TEX. R. APP. P. 44.2(b). This court will not overturn a criminal conviction for nonconstitutional error if, after examining the record as a whole, it has "fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Schutz*, 63 S.W.3d at 444. In considering the potential harm, the focus is not on whether the outcome of the trial was proper despite the error, but whether the error had a substantial or injurious effect or influence on the jury's verdict. *See Barshaw*, No. PD-1615-10, 2011 WL 2555661 at *2 (citing *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)). A conviction must be reversed for nonconstitutional error if the reviewing court has grave doubt that the result of the trial was free from the substantial effect of the error. *Id.* (citing *Burnett v. State*, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002)). "Grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* "[I]n cases of grave doubt as to harmlessness the petitioner must win." *Id.*

In assessing the likelihood that the jury's decision was improperly influenced, the appellate court must consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. ***Id.*** (citing ***Morales v. State***, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); ***Haley v. State***, 173 S.W.3d 510, 518–19 (Tex. Crim. App. 2005)). The reviewing court may also consider the jury instruction given by the trial judge, the State's theory, defensive theories, closing arguments, voir dire, and whether the State emphasized the error. ***Id.*** (citing ***Motilla v. State***, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002)).

**Discussion**

At trial, Detective Brock testified that during her forensic interview, the child stated that "Chucky" conducted acts of sexual abuse against her. The detective also alluded to the fact that "Chucky" was a doll in a series of popular horror films, and that the child "projected" her abuse onto the "Chucky" doll in the film franchise when the child was actually referring to Appellant.

On cross examination, defense counsel elicited testimony from Detective Brock that even though children often project acts of sexual abuse that actually occurred onto fictional characters, sometimes both the characters and the alleged abuse are fictional.

On redirect examination, the State responded to the suggestion by defense counsel that the child made up the events as follows:

> [State's Counsel:] Now, [defense counsel] asked you, you know, sometimes kids will say, you know, the Chucky doll did this; sometimes they're just making this up. Do you remember that?
>
> [Detective Brock:] Yes.
>
> [State's Counsel:] Let me ask you this just to put it out there. Detective, do you believe that [the child] is making this up?
>
> [Detective Brock:] I do not.
>
> [Defense Counsel:] I'm going to object, invading the province of the jury.
>
> [The Court:] The Court overrules the objection. The Court overrules the objection based on the cross of the witness. And she's allowed to answer that question.
>
> [State's Counsel:] Based on your entire investigation, do you believe that the defendant committed the offense of aggravated sexual assault of a child

by sticking his penis into [the child's] six-year-old vagina?

[Defense Counsel:] Your Honor, I object, invading the province of the jury.

[The Court:] Rephrase that.

[State's Counsel:] When you say she wasn't making this up, did you believe the defendant committed this offense?

[Defense Counsel:] Same objection.

[The Court:] The Court overrules the objection based on the cross of the witness. Go ahead.

[Detective Brock:] Could you repeat the question?

[State's Counsel:] Based on your investigation, do you believe that the defendant committed the offense of aggravated sexual assault of a child?

[Detective Brock:] I do.

[State's Counsel:] Is there any doubt in your mind about that?

[Detective Brock:] No.

Appellant contends that the admission of this testimony was improper expert testimony on the ultimate issue of fact to be decided by the jury. *See, e.g., **Yount v. State***, 872 S.W.2d 706, 712 (Tex. Crim. App. 1993); ***Duckett v. State***, 797 S.W.2d 906, 920 (Tex. Crim. App. 1990), *overruled on other grounds*, ***Cohn v. State***, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993). The State argues, however, that Appellant's "invading the province of the jury" objection was insufficient to preserve any error in the admission of this testimony.

Appellant concedes that "invading the province of the jury" is an objection that does not always preserve error. However, he relies on ***Woods v. State*** in arguing that he preserved the issue for appeal. *See generally **Woods v. State***, 13 S.W.3d 100 (Tex. App.—Texarkana 2000, pet. ref'd). In ***Woods***, the State called six witnesses to testify that they had viewed a surveillance videotape of a robbery and that, based on their viewing of the videotape, the defendant was the person shown committing the crime. Three of these witnesses were police officers, and there was no evidence that they had seen the defendant before trial. ***Id.*** at 102-03. The defendant objected that the testimony of all six witnesses invaded the province of the jury, and also objected to bolstering. ***Id.*** at 105. The court held that the objection of bolstering, especially when accompanied by the objection of invading the province of the jury, preserved error on the question

of whether the testimony of these witnesses was admissible.  *See id.* at 104-05.  The court stated further that in the context of the objection, invading the province of the jury was "probably sufficient to inform the trial court as to the nature of the objection."  **Id.** at 105.  But the court's preservation holding was based on both objections taken together.  *See id.*

The only objection made in the instant case was "invading the province of the jury." Therefore, **Woods** is distinguishable from this case.  Accordingly, we hold that without an accompanying timely, specific, and valid objection during the trial that comports with the argument made on appeal, Appellant's "invading the province of the jury" amounts to no objection at all and preserved nothing for our review.  *See Ortiz*, 834 S.W.2d at 348.

Even if we were to hold that Appellant preserved error in challenging Detective Brock's testimony, Appellant cannot show that he was harmed by its admission.  Miller testified that she saw Appellant touch the victim in an inappropriate manner.   It is clear that without her actions in contacting the police, the sexual abuse may not have been discovered.  The victim testified that Appellant touched her inappropriately with his hand and that his genitals contacted her genitals on more than one occasion.  The victim's mother, a prostitute, admitted that she saw Appellant grabbing the victim's bottom and crotch on the day in question, and that she saw Appellant penetrate the victim's vagina with his penis. All of this testimony corroborated Miller's discovery of sexual abuse.

There were some variances in the testimony as to whether the victim and Appellant were clothed or not during the assault and the timing of the assaults.   It was also shown that the victim's mother suffered from some sort of cognitive disabilities and that she had a ninth grade education. She later testified that she used crack cocaine and that she had difficulty remembering the precise details of the incident in question, but admitted again during recross examination that she witnessed Appellant touching the victim inappropriately and that she witnessed him attempting to have intercourse with the victim.

Nurse Hinson testified that the victim's perineum was red and swollen, although, due to the passage of time, she could not conclude with certainty that it was caused by sexual abuse.   Nurse Hinson also stated that the victim did not make a specific outcry concerning her abuse, but was allowed to testify to statements made by the victim without objection as follows:

> [These are] her words.   I asked her, were there any problems or had she been hurt or was there anything going on, and she said, "Yes.   This boy couldn't get in our house.   He was so mad.

6

My momma told [him], 'no, you can't mess with [my sister].' His name is Efrain. She's [calling] 9-1-1, I'll call. Efrain hurt [my sister]. He raped her and he needs to go to jail."

[I asked her,] "Did you see?"

[She said,] "Yes. He was pulling his pants, put his wiener in her privates. My sister was then somewhere else. He came on the back porch. Then he hit me. My mom saw him and he didn't listen."

[I asked her,] "Happened more than one time?"

[She said,] "A lot of times. I slapped him. He told me 'bring my sister out.' I told her, 'Sissy, I saved your life.' Boogieman, my cousin, said, 'it was rape.' "

Detective Brock also testified without objection that during the CAC interview, the victim demonstrated vast knowledge of sexual terms and activities, and due to her mother's lifestyle and the family's living conditions, it became clear that the victim was "exposed to porn and sex on a daily basis." In the interview, the six year old victim described, in shocking detail, the acts committed against her by Appellant while using derogatory terms that only an adult would know. Detective Brock quoted the description of the events provided by the victim. Suffice it to say that the words used to describe the abuse by the victim are so graphic that they need not be repeated here. Appellant did not object to any of this testimony.

Additionally, Appellant did not testify, nor did he call any witnesses. The State did emphasize the complained of testimony when it occurred, and also referenced it during the jury argument. However, the State discussed not only the complained of evidence, but all of the testimony from all the witnesses, including the victim, Nurse Hinson, and the victim's mother. The State also reminded the jury members that they decide which witnesses to believe. The guilt-innocence phase of the trial, including opening statements and jury argument, consumed less than 160 pages of the reporter's record. Having reviewed the entire record as a whole, we are left with fair assurance that the evidence did not influence the jury, or influenced the jury only slightly. *See Schutz*, 63 S.W.3d at 444.

Appellant's sole issue is overruled.

### DISPOSITION

We *affirm* the judgment of the trial court.

**SAM GRIFFITH**
Justice

Opinion delivered July 29, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

7