**Affirmed and Memorandum Opinion filed July 22, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-01086-CR

---

**GARY BERNARD ALLEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 434th Judicial District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 10-DCR-054820**

---

## M E M O R A N D U M   O P I N I O N

A jury heard evidence that appellant Gary Bernard Allen and the complainant Shafin Lark got into a drunken fight in May 2010, and appellant stabbed Lark to death. The jury found appellant guilty of murder, rejecting his claim of self defense, and assessed punishment at twenty years' confinement. Appellant challenges his conviction in five issues, contending that the evidence is

legally insufficient to support the jury's guilty verdict and that the trial court erred by admitting and excluding certain evidence. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

In his second issue, appellant contends the evidence is legally insufficient to support his conviction for murder. In particular, he contends that a rational jury could not have found that he acted intentionally or that he did not act in self defense.

## A. Standard of Review

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Winfrey v. State*, 393 S.W .3d 763, 768 (Tex. Crim. App. 2013) (quotation omitted). When an appellant challenges the sufficiency of the evidence to support the jury's rejection of a self-defense claim, we similarly must determine whether "any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Winfrey*, 393 S.W.3d at 768. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quotation omitted). "[P]roof of a culpable mental state generally relies on circumstantial evidence." *Dillon v. State*, 574

2

S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978). Intent may be determined from a defendant's words, acts, and conduct. *Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998).

**B.    Trial Evidence**

Appellant urges that there is no evidence that he acted intentionally rather than in self defense where uncontroverted evidence establishes that appellant was not the aggressor, that one witness at the scene feared for appellant's life as the altercation escalated, and that appellant was bleeding at the scene. We disagree. The jury heard the following evidence from which it was entitled to conclude that appellant was the aggressor and he did not act in self defense.

The jury heard evidence that appellant and his six-month-pregnant girlfriend, Sequalla Hicks, attended a crawfish boil at appellant's place of employment during the evening of May 7, 2010. Although Hicks testified for appellant, she stated that appellant has an "aggressive" personality and "always gets the last word." She testified that appellant had been drinking all day, and they stayed at the crawfish boil until it ended. Appellant had "gotten into it" with a guy at the crawfish boil, and the guy pushed appellant down. The "guy," Jorge Ledesma, also testified that appellant "got in my face" at the crawfish boil, so Ledesma pushed appellant down. Appellant was upset and acting aggressive because Ledesma threw out a drink that appellant had made for Ledesma with appellant's alcohol.

Hicks further testified that she and appellant left the crawfish boil at about 10:00 or 11:00 p.m. and went to the house of Hicks's aunt and uncle, Angela Rollins and Peter McCoy. Lark, the decedent, had been living with Rollins and McCoy. Rollins, McCoy, Lark, Rollins's adult daughter Tracy, Rollins's neighbor

3

Richard Haynes, and others were at the house that night when Hicks and appellant arrived. Lark and appellant were both drinking.

McCoy testified that appellant made a comment to Lark about Lark living at the house and not paying bills. Another witness testified that appellant talked to Lark about getting a job, and Lark was "not totally understanding," so appellant was "agitated." Tracy testified that she could not hear the conversation, but it was apparent that there was animosity, and appellant was the aggressor. Tracy testified that Lark was "trying to defuse the situation by calming him down." McCoy testified that appellant got upset when McCoy suggested Hicks could bring the baby to Rollins and McCoy to visit. McCoy told appellant to leave, and McCoy and Lark went inside the house briefly.

When McCoy and Lark came back outside, Hicks was trying to get appellant to leave with her. Appellant did not want to leave, and they were having "angry words," according to Rollins. Hicks tried to pull appellant toward the car, and appellant pushed her.[1]

When Lark saw the altercation, he stepped in and tried to separate the couple. Tracy testified that Lark did not push appellant.[2] She testified that Lark asked appellant to stop pushing Hicks because Hicks was pregnant. Appellant

---

[1] Tracy testified that appellant was "nudging" or "pushing" Hicks. McCoy testified that appellant "pushe[d] her up against my truck." Rollins testified that appellant "caught [Hicks] around her neck."

[2] The testimony at trial on this point was conflicting. McCoy testified that Lark shoved appellant. Hicks testified that Lark started a fight by hitting appellant in the face. Rollins testified that Lark and appellant began "tussling." Viewing the evidence in the light most favorable to the jury's verdict, we assume the jury found Tracy's testimony to be credible; the jury was free to believe her testimony over other witnesses' testimony. *See, e.g.*, *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) ("The jury, being the judges of the facts and the credibility of the witnesses, could choose to believe or disbelieve the witnesses, or any portion of their testimony.").

4

became upset. McCoy testified that Lark never said anything antagonistic or threatening to appellant; Lark wasn't belligerent, mean, or angry.

McCoy testified that appellant then swung and hit Lark two or three times, and Lark fell to the ground.[3] Hicks testified that by the end of the fight, appellant was on top of Lark. Lark had been stabbed several times, and he died. Roger Milton, an assistant medical examiner at the Harris County Institute of Forensic Sciences, testified that the fatal wound was near Lark's eye socket and was three inches deep. It fractured his skull and perforated the membrane surrounding his brain. There was another stab wound on Lark's back.

No witness actually saw appellant stab Lark with a weapon, and the weapon was never recovered. However, multiple witnesses, including Hicks, testified that appellant regularly carried a knife. Shortly before the fight, Haynes saw appellant with a knife.[4] And Hicks acknowledged at trial that she told the police, "Once I

---

[3] Rollins and Tracy testified that there were two separate altercations between Lark and appellant: first Lark broke up appellant's altercation with Hicks, and then Lark and McCoy went into the house with Lark emerging soon afterward for the second altercation. Rollins agreed with defense counsel that the second fight was "like mutual combat, two boys fighting," and both of them were punching each other. Although Rollins testified that Lark ran towards appellant, Tracy testified that Lark merely walked up to appellant. Further, Tracy testified that Rollins had been drinking that night, contrary to Rollins's testimony that she had not been drinking. Rollins also testified contrary to every other witness regarding the time of the events.

As recited above, however, McCoy testified that the first "altercation" was merely verbal and the only fight occurred after Lark and McCoy had come out of the house together. Viewing the evidence in the light most favorable to the jury's verdict, we assume the jury found McCoy's testimony to be credible; the jury was free to believe all or some of any witness's testimony. *See, e.g.*, *Saxton*, 707 S.W.2d at 614.

[4] Appellant discounts Haynes's testimony about the knife because Haynes was high on PCP the night of the fight. However, a witness's impairment does not necessarily negate their testimony as a matter of law. *See Jasso v. State*, 112 S.W.3d 805, 809 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (although witnesses consumed significant amounts of alcohol, "this did not prevent them from remembering and recounting what transpired and it does not render the evidence legally insufficient"); *see also Vasquez v. State*, 67 S.W.3d 229, 237 (Tex. Crim. App. 2002) (even if a witness was under the influence of cocaine at the time of the assault, "that would not render the evidence legally insufficient"). The ultimate weight to be given the

seen all the blood, I figured that [appellant] probably had stuck him with the pocketknife." Conversely, no witness saw Lark with a knife or knew him to carry a knife.

Following the altercation, Hicks testified she drove appellant away from the scene. Appellant's hand had also been cut and was bleeding a lot inside and outside of the car. Milton testified that appellant's wound was consistent with a knife slipping in his hand during a struggle. Milton also testified that Lark had no injuries on his hands consistent with having been in a fist fight.

Hicks dropped off appellant at his mother's house and went home, where the police were waiting for her. Officers from the Houston Police Department (HPD) took her statement and asked her to tell appellant to get in touch with them. On May 8, the HPD issued a press release describing appellant as a person of interest. The HPD believed appellant had left town. Hicks spoke with appellant on the phone every day for about a month, and she told appellant that the police wanted to talk with him. But she lied to the police and told them she had not spoken to him. Eventually the HPD obtained a warrant for his arrest, and appellant turned himself in on June 7.

At trial, appellant adduced evidence in support of his self-defense theory. Specifically, Hicks testified that McCoy and Lark had threatened appellant with McCoy's dog before the fight; however, multiple witnesses refuted that story. Further, Haynes, who had known appellant for about ten years, testified that he heard McCoy say that McCoy was going inside to get a gun. Haynes testified that he told appellant to leave because "[t]hey're fixing to kill you," and he specifically told appellant about the gun. McCoy, however, denied ever saying anything about

evidence rests with the jury. *See, e.g.*, *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

getting a gun, and he testified that he did not own a gun. Rather, he testified that appellant was the one who said, "Don't make me go to my car to get my gun." The jury rejected the self-defense theory, and we therefore presume that the jury resolved this conflicting evidence against appellant. *See Saxton*, 804 S.W.2d at 914.

## C. Analysis

Reviewing the evidence above, a rational fact finder could have found that appellant intentionally caused Lark's death or committed an act clearly dangerous to human life intending to cause serious bodily injury to Lark. *See* Tex. Penal Code Ann. 19.02(b)(1)–(2).[5] Further, a fact finder could have rejected appellant's claim of self defense based on a lack of reasonable belief that deadly force was immediately necessary to protect appellant against a use or attempted use of unlawful deadly force by Lark. *See id.* § 9.32(a).

### 1. Legally Sufficient Evidence of Murder

A fact finder could have found that appellant had a motive and state of mind to attack and kill Lark based on the acrimonious dialogue between Lark and appellant and based on appellant's aggressive attitude that evening. *Cf. Ross v. State*, 133 S.W.3d 618, 621 (Tex. Crim. App. 2004) (legally and factually sufficient evidence when the defendant threatened the complainant not long before she was murdered). A fact finder could have found that appellant possessed and used a knife capable of causing Lark's injuries, and appellant stabbed Lark in the head, thus evidencing appellant's intent to cause death or serious bodily injury. *See Palomo v. State*, 352 S.W.3d 87, 90 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (legally sufficient evidence when the defendant was seen with a weapon

---

[5] Appellant was indicted, and the jury was charged, under both theories of murder.

7

similar to the murder weapon); *cf. Gutierrez v. State*, 85 S.W.3d 446, 450–51 (Tex. App.—Austin 2002, pet. ref'd) (factually sufficient evidence of intent to cause serious bodily injury when the defendant stabbed the complainant in the chest). And a fact finder could have found that appellant intended to avoid apprehension by leaving town and evading the HPD's attempts to contact him. *See Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) ("[A] factfinder may draw an inference of guilt from the circumstance of flight.").

All of this evidence would have enabled a rational fact finder to find beyond a reasonable doubt that appellant intentionally caused Lark's death or committed an act clearly dangerous to human life intending to cause serious bodily injury to Lark.

## 2. *Legally Sufficient Evidence to Reject Self Defense*

The jury could have rejected appellant's self-defense claim. The jury heard evidence that no one saw Lark with a knife and that he was not known to carry a knife, but the jury heard the opposite about appellant. *Cf. Gutierrez*, 85 S.W.3d at 450–51 (factually sufficient evidence to reject self-defense claim when the complainant was not in possession of a weapon). The jury heard evidence that Lark never made any threats to appellant and that appellant was the aggressor. *Cf. id.* (factually sufficient evidence to reject self-defense claim when the complainant had not threatened the appellant with deadly force). Although some of Hicks's and Haynes's testimony supported appellant's claim of self defense, the jury was free to disbelieve it and resolve conflicts in the evidence against him. *See, e.g.*, *Saxton*, 804 S.W.2d at 914.

Accordingly, a rational fact finder could have found that appellant lacked a reasonable belief that that deadly force was immediately necessary to protect him

against a use or attempted use of unlawful deadly force by Lark. The evidence is legally sufficient to support appellant's conviction.

Appellant's second issue is overruled.

## II. ADMISSION AND EXCLUSION OF EVIDENCE

In his first, third, fourth, and fifth issues, appellant contends the trial court erred by admitting and excluding certain evidence. We review a trial court court's ruling to admit or exclude evidence for an abuse of discretion, and we will not reverse the trial court's decision if it is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). And we will not reverse the trial court's judgment unless the error affects a substantial right of the appellant. *See* Tex. R. Evid. 103(a); Tex. R. App. P. 44.2(b); *Walters v. State*, 247 S.W.3d 204, 218–19 (Tex. Crim. App. 2007). "Substantial rights are affected when the error has a substantial and injurious effect or influence in determining the jury's verdict." *Walters*, 247 S.W.3d at 218 (quotation omitted).

With these principles in mind, we address each of appellant's issues below.

## A. Investigator's Opinion Regarding a "Murder"

The State asked HPD Homicide Division Investigator Brian Evans if, during the course of his investigation, he came up with "a theory of the case." Appellant objected to relevance, bolstering, and invading the province of the jury. Appellant complained that Evans "is not an expert witness and he doesn't have familiar common knowledge that — of what happened." When the trial court overruled the objection, Evans testified, "There was an altercation that had taken place between Mr. Allen, Shafin Lark, where Mr. Lark was assaulted with a weapon and subsequently expired. And, basic — basically, meeting the parameters of a

9

homicide — murder." Appellant then renewed his objection to "[i]nvading the province of the jury, improper direct-examination."

In his first issue on appeal, appellant contends the trial court abused its discretion in allowing Evans "to give his opinion that appellant committed murder" because Evans "had no personal knowledge upon which to base his opinion and the investigator's opinion supplanted the jury's determination of guilt or innocence." Appellant contends that Evans gave lay witness opinion testimony not based on personal knowledge, violating Rule 701 of the Texas Rules of Evidence.[6]

To preserve error for appellate review, a party must make an objection to the trial court stating the grounds for the ruling sought with sufficient specificity to make the trial court ware of the complaint unless the grounds were apparent from the context, and the party's objection in the trial court must comport with the complaint on appeal. *See, e.g.*, *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Some courts have held that objections to relevance, bolstering, and invading the province of the jury do not preserve error for an appellate complaint based on Rule 701.[7]

---

[6] *See* Tex. R. Evid. 701 ("If a the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inference which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.").

[7] *See Hurst v. State*, 406 S.W.3d 617, 621–23 (Tex. App.—Eastland 2013, no pet.) (objection to "invading the province of the jury" with arguments regarding "the form of the question, calling for a conclusion, and calling for an opinion" did not preserve error for an appellate complaint based on Rule 701; noting that "'invades the province of the jury' is no longer a valid objection to opinion testimony" in light of Rule 704, which permits opinion testimony on ultimate issues of fact (quotation omitted)); *Hawkins v. State*, No. 08-07-00180-CR, 2009 WL 783257, at *2 (Tex. App.—El Paso Mar. 26, 2009, no pet.) (mem. op., not designated for publication) (objections to "invades the province of the jury and speculation" did not preserve error for appellate complaint based on Rule 701); *Boone v. State*, No. 05-07-00814-CR, 2008 WL 4926676, at *1 (Tex. App.—Dallas Nov. 19, 2008, no pet.) (mem. op., not designated for publication) (same). *But see Woods v. State*, 13 S.W.3d 100, 104–05 (Tex. App.—Texarkana 2000, pet. ref'd) (objections to bolstering and invading the province of the jury

To the extent that appellant's objections, viewed in context of his statement that Evans did not have "familiar common knowledge . . . of what happened," would have preserved error under Rule 701 concerning a witness's opinion not being "rationally based on the perception of the witness," we nonetheless hold that any error was harmless. The error did not have a substantial and injurious effect or influence in determining the jury's verdict because the jury heard all the evidence upon which Evans based his lay opinion that a murder had been committed; evidence admitted and unchallenged allowed the jury to make the decision to reject appellant's self-defense claim independent of Evans's testimony. *See Hurst*, 406 S.W.3d at 623–24 (harmless to admit investigator's opinion of the defendant's involvement in a murder when the jury "possessed the same information as the witness and could draw the proper inferences"; the jury "had the information from another source"); *see also Woods*, 13 S.W.3d at 105 (holding harmless the admission of testimony from three police officers who watched a surveillance tape of a burglary and testified that the defendant was the man in the tape because the jury had before it other identification witnesses and the surveillance tape itself was clear and strong evidence of identity); *Anguiano v. State*, 774 S.W.3d 344, 347 (Tex. App.—Houston [14th Dist.] 1989, no writ) (any error in allowing officer to testify that he believed the defendants were "agreeing" to engage in prostitution was rendered harmless in part because "there was other testimony properly in evidence upon which the jury could reach its own determination whether appellants committed prostitution").

Appellant's first issue is overruled.

---

probably preserved error for a Rule 701 complaint although the better objection would have been that the evidence was not based on personal knowledge and was not helpful to the jury; regardless, any error was harmless).

11

**B.**    **Ledesma's Testimony About the Altercation at the Crawfish Boil**

As discussed above in Part I.B of this opinion, Ledesma testified about an altercation he had with appellant at the company crawfish boil on the evening that appellant stabbed Lark. In appellant's third issue on appeal, he contends the trial court erred by admitting Ledesma's testimony concerning an extraneous offense because it was inadmissible and irrelevant, and the State did not provide proper notice. In particular, appellant contends that (1) the notice was deficient because it did not name the alleged victim; (2) the notice was deficient because it did not identify the county in which the act occurred; (3) the evidence was inadmissible because it was irrelevant under Rule 401; (4) the evidence was inadmissible under Rule 404(b) of the Texas Rules of Evidence; and (5) the evidence was inadmissible because it was unfairly prejudicial under Rule 403.

The State contends, and we agree, that appellant's third issue is multifarious. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) (point of error is multifarious if it is based on more than one legal theory). "We may disregard and refuse to review multifarious points." *Nwosoucha v. State*, 325 S.W.3d 816, 828 n.17 (Tex. App.—Houston [14th Dist.] 2010, pet. struck). But, in the interest of justice, we will consider multifarious issues to the extent we are able to identify appellant's complaints with reasonable certainty. *See id.*; *see also Davis*, 329 S.W.3d at 803.

### 1. *Appellate Complaints About Improper Notice Not Preserved*

On appeal, appellant quotes from Article 37.07, Section 3(g), of the Code of Criminal Procedure, which requires the State's notice of extraneous crimes or bad acts that have not resulted in final convictions to include "the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act." Tex. Code Crim. Proc. Ann. art. 37.07,

12

§ 3(g). Appellant contends, without citation to the clerk's record, that the notice in this case is deficient because it does not state the name of the alleged victim and does not identify the County in which the bad act allegedly occurred.

However, appellant never made these complaints to the trial court. Appellant's complaints to the trial court concerned the fact that the notice allegedly contained an incorrect date, and that it provided notice of an intent to introduce the evidence only under Rule 404(b) but not Rule 404(a). Appellant's complaints about improper notice, therefore, were not preserved because his complaints on appeal do not comport with his objections in the trial court. *See, e.g.*, *Clark*, 365 S.W.3d at 339.

### 2. *Ledesma's Testimony Was Relevant Under Rule 401*

Appellant contends that Ledesma's testimony was irrelevant because it did not tend to prove or disprove an element of the offense and only served to inflame the jury. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. This definition is necessarily broad. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). Even evidence that is inadmissible character evidence may be relevant. *Id.* at 386.

We cannot "say with confidence that by no reasonable perception of common experience can it be concluded that [the] proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be." *Id.* at 391. Nor is it clear to this court that the trial court's "common experience is really no more than the operation of a common prejudice, not borne out in reason." *Id.* Indeed, the fact that appellant was angry and agitated earlier the same evening tends to prove his intent to commit an act clearly

13

dangerous to human life against Lark without a reasonable belief that deadly force was necessary to protect himself. *See, e.g.*, *Robinson v. State*, 844 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (prior acts of aggression are admissible against a defendant claiming self defense)

The trial court did not abuse its discretion by concluding that this evidence was relevant under Rule 401.

### 3. *Ledesma's Testimony Was Admissible Under Rule 404*

Appellant contends Ledesma's testimony was inadmissible under Rule 404(b) because "it did nothing more than attempt to prove bad character and conduct in conformity with that bad character." Rule 404(b) states, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Tex. R. Evid. 404(b). However, the evidence may be admissible for other purposes, such as to prove motive, intent, or absence of mistake or accident. *Id.* Further, evidence is not inadmissible under Rule 404(b) "when it is offered to rebut an affirmative defense or a defensive issue that negates one of the elements of the crime." *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

Ledesma's testimony was admissible to prove appellant's motive or intent and to rebut his theory of self defense. "When the accused claims self-defense or accident, the State, in order to show the accused's intent, may show other violent acts where the defendant was an aggressor." *Robinson*, 844 S.W.2d at 929; *accord Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd); *Jones v. State*, 241 S.W.3d 666, 669 (Tex. App.—Texarkana 2007, no pet.); *Yarbough v. State*, 753 S.W.2d 489, 490–91 (Tex. App.—Beaumont 1988, no pet.); *see also Halliburton v. State*, 528 S.W.2d 216, 218 (Tex. Crim. App. 1975) (evidence that the defendant shot someone else some time after the complainant

14

was admissible to disprove her claim of self defense); *Morrow v. State*, 735 S.W.2d 907, 909 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd) (same).

Accordingly, the trial court did not abuse its discretion by concluding this evidence was admissible under Rule 404.

### 4. *Appellate Complaint About Rule 403 Balancing Waived*

Although appellant quotes Rule 403 in his brief, he makes no attempt to argue how Rule 403 should apply in this case, nor does he discuss how Rule 403 has been applied in any other cases. He merely states that the evidence was "unfairly prejudicial." We hold that appellant waived error by failing to adequately brief this issue. *See, e.g.*, *Mauricio v. State*, 104 S.W.3d 919, 920 n.1 (Tex. App.—Houston [14th Dist.] 2003) (holding that although the appellant complained on appeal that the evidence should have been excluded under Rule 403 because the probative value was substantially outweighed by the danger of unfair prejudice and misleading the jury, the appellant "waived error as to Rule 403 [because] his brief includes no argument or explanation why the [evidence] was unfairly prejudicial or misleading"), *aff'd*, 153 S.W.3d 389 (Tex. Crim. App. 2005); *see also* Tex. R. App. P. 38.1(i); *Murchison v. State*, 93 S.W.3d 239, 251 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

### 5. *Appellant Was Not Harmed*

Finally, the State responds to appellant's multifarious issue by contending that appellant was not harmed because similar evidence was admitted without objection to prove the same facts of Ledesma's testimony. *See, e.g.*, *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ("[I]mproper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial."). We agree.

15

Specifically, as discussed above in Part I.B of this opinion, Hicks testified without objection that appellant had "gotten into it" with a guy at the crawfish boil, and the guy pushed appellant down. She testified that appellant has an "aggressive" personality. Given Hicks's testimony, Ledesma's testimony on the same subject matter would not have influenced the jury or would have had but a slight effect. *See id.* In this context, Ledesma's testimony would not have had a "substantial and injurious effect or influence in determining the jury's verdict." *See Walters*, 247 S.W.3d at 218 (quotation omitted). Any error in admitting Ledesma's testimony would not require reversal. *See* Tex. R. App. 44.2(b).

Appellant's third issue is overruled.

## C. Evans's Testimony About Appellant's Conversation with Estes

In his fourth issue, appellant contends the trial court denied him his Due Process rights to a fair trial and to present a complete defense when the trial court refused to admit Evans's testimony about a conversation he had with Steve Estes regarding appellant's contention that he acted in self defense. Appellant's sole authority on appeal is *Wiley v. State*, where the Court of Criminal Appeals held that there is a constitutional violation when a trial court makes a "clearly erroneous ruling excluding otherwise relevant, reliable evidence which forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." 74 S.W.3d 399, 405 (Tex. Crim. App. 2002) (quotation omitted).

*Wiley* is of no assistance to appellant as appellant has not established that the trial court clearly erred when it sustained the State's hearsay objection to this testimony. Generally, hearsay is inadmissible because it is inherently unreliable. *See Fischer v. State*, 207 S.W.3d 846, 852 (Tex. App.—Houston [14th Dist.] 2006), *aff'd*, 252 S.W.3d 375 (Tex. Crim. App. 2008); *see also Guidry v. State*, 9

16

S.W.3d 133, 150 (Tex. Crim. App. 1999) (noting "the presumption that a hearsay statement is not reliable"). Neither to the trial court nor to this court has appellant argued that Evans's testimony was not hearsay, or that it would have been reliable despite it being hearsay. Because hearsay evidence is not reliable evidence, we cannot conclude that the trial court made a "clearly erroneous ruling excluding otherwise relevant, reliable evidence." *See Wiley*, 74 S.W.3d at 405.

Appellant's fourth issue is overruled.

## D. Evans's Testimony About Intoxication of Witnesses and Consistency of Statements

In his fifth issue, appellant contends the trial court erred by allowing Evans to "improperly bolster the credibility of two of the State's witnesses." In particular, appellant complains about Evans's testimony that McCoy and Rollins did not appear intoxicated and that their statements were consistent with the evidence on the scene. Citing Rule 608 of the Texas Rules of Evidence, appellant contends that a witness may not testify that another witness is telling the truth. The State contends appellant failed to preserve error.

Appellant did not object to Evans's testimony that McCoy and Rollins did not appear intoxicated. Thus, appellant failed to preserve any error about this testimony. *See* Tex. R. App. P. 33.1.

Similarly, appellant's only objections to Evans's testimony regarding McCoy's and Rollins's statements was based on hearsay—appellant did not mention bolstering or Rule 608. Thus, his complaint on appeal does not comport with his objection in the trial court, and he failed to preserve error. *See Gregory v. State*, 56 S.W.3d 164, 184 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd) (hearsay objection did not preserve bolstering issue); *see also Matz v. State*, 21 S.W.3d 911, 913 n.2 (Tex. App.—Fort Worth 2000, pet. ref'd) (same).

After Evans had testified about McCoy and Rollins, appellant eventually objected to bolstering when the State asked Evans about the consistency of Haynes's statement. Appellant's objection to bolstering was not timely with regard to Evans's testimony about McCoy and Rollins because appellant objected well after Evans answered the State's questions; therefore, appellant failed to preserve error for our review. *See, e.g.*, *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995) ("If he fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived.").

Appellant's fifth issue is overruled.

## III. CONCLUSION

Having overruled each of appellant's issues, we affirm the trial court's judgment.[8]

/s/            Sharon McCally
               Justice

Panel consists of Justices McCally, Busby, and Donovan.

Do Not Publish — Tex. R. App. P. 47.2(b).

---

[8] The State has filed a motion with this court requesting supplementation of the clerk's record. We carried the motion with the case and we now deny it as moot because none of the requested materials are necessary to dispose of the appeal. We note, however, the State did not need to file a motion with this court to have the clerk's record supplemented. The State should have made its request to supplement the record directly to the trial court clerk. *See* Tex. R. App. P. 34.5(c)(1).

18